STATE of Missouri, Respondent,

v.

William R. SCHROEDER, Appellant.

No. SC 90738.

Supreme Court of Missouri,
En Banc.

Jan. 11, 2011.

470

Sara K. Tupper and Frank K. Carlson, Carlson Law Firm, Union, for Schroeder.

James B. Farnsworth, Attorney General's Office, Jefferson City, for the State.

WILLIAM RAY PRICE, JR., Chief Justice.

## I. Introduction

William Schroeder appeals his conviction of failure to dim headlights (section 307.070), driving while intoxicated (DWI) (section 577.010), and driving with a revoked license (DWR) (section 302.321).[1]

The judgment is affirmed.

## II. Facts and Procedure

On October 13, 2006, just before 2:00 a.m., William Schroeder drove his vehicle in Franklin County. Highway patrolman L.J. Keathley traveled behind him. Schroeder pulled his vehicle to the shoulder to check for a low tire. As Trooper Keathley passed Schroeder's stopped vehicle, he saw Schroeder's bright headlights "come on and stay on." Keathley turned around and drove back to Schroeder's ve-

---

1. All statutory references are to RSMo Supp. 2006 unless otherwise indicated.

hicle "to see if the driver needed assistance" and to "take enforcement action for failure to dim headlights."[2]

Keathley parked his patrol car behind Schroeder's vehicle and activated his emergency lights. Schroeder stepped out of the driver's seat and walked to the passenger side, looking at the tires. Keathley asked Schroeder what was wrong. Schroeder replied that "the car did not feel right," so he stopped his vehicle to make sure there was not a problem. During this exchange, Schroeder slurred his speech, his eyes were glassy and bloodshot, and he had problems maintaining his balance. Keathley asked for Schroeder's driver's license, but Schroeder did not have one. At Keathley's request, Schroeder sat down in Keathley's patrol car, and Keathley ran a computer check that showed that Schroeder's license had been revoked.

■ In the patrol car, Keathley smelled alcohol on Schroeder's breath. Keathley asked Schroeder if he had been drinking and Schroeder admitted that he had drank six beers. Keathley gave Schroeder a preliminary breath test, which came back positive for the presence of alcohol. Keathley asked Schroeder to step out of the patrol car, and Schroeder agreed to complete a field sobriety test. First, Schroeder failed the one-leg stand. He was unable to keep his balance beyond the count of "one" and swayed his arms to balance. After stumbling, Schroeder blurted, "I couldn't do this when I'm straight." Next, Trooper Keathley performed the horizontal-gaze-nystagmus test, in which Schroeder's eyes lacked smooth pursuit, and showed nystag-

mus at maximum deviation.[3] Schroeder swayed during the test.

Keathley arrested Schroeder for DWI and took Schroeder to the local police station, where he advised Schroeder of his *Miranda* rights. Schroeder refused to give a breath sample for chemical testing.

The trial court found Schroeder guilty of DWI, DWR, and failure to dim headlights. The court found that Schroeder was a chronic offender under section 577.023 and sentenced Schroeder to five years for the DWI and a concurrent one-year term for DWR. Schroeder was fined $25 for failure to dim headlights.

## III. The Trial Court Did Not Err in Finding Schroeder Guilty of Failing to Dim His Headlights.

A driver whose vehicle is equipped with multiple-beam headlights violates section 307.070 if he (1) fails to adjust his headlights so that their "glaring rays are not projected into the eyes of the other driver" when he is (2) within 300 feet to the rear of a vehicle traveling in the same direction. Schroeder alleges that the State produced no evidence that (1) the trooper observed Schroeder's vehicle traveling in the same direction as any other vehicle at the time its high beams allegedly came on, or (2) that the glaring rays projected into the eyes of the other driver.

### Standard of Review

■ Appellate review is limited to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Moore*, 303

---

**2.** Keathley's statements come from the alcohol influence report which was admitted into evidence.

**3.** Under the horizontal-gaze-nystagmus test, a suspect is required to follow an object such as a finger or pen with his eyes as the object is

moved laterally along a horizontal plane to the periphery of the suspect's vision. *State v. Rose*, 86 S.W.3d 90, 96 (Mo.App.2002). HGN evidence is a reliable measure of an illegal level of intoxication. *Id.*

S.W.3d 515, 519 (Mo. banc 2010). The Court is required to take the evidence in the light most favorable to the State and to grant the State all reasonable inferences from the evidence. *Id.*

### Analysis

Contrary to Schroeder's assertions, the State produced evidence that Schroeder's headlights glared into Trooper Keathley's eyes when Schroeder was within 300 feet of Keathley's vehicle. In the alcohol influence report, Trooper Keathley stated, "As I began to pass [Schroeder's] vehicle, I noticed its bright headlights came on and stayed on after I went by them." Applying the evidence in the light most favorable to the verdict, a reasonable fact-finder could conclude that Schroeder's headlights glared into Keathley's eyes when Keathley was within 300 feet of Schroeder's vehicle.

### IV. The Trial Court Did Not Err By Denying Schroeder's Motion to Suppress.

Schroeder makes two different arguments alleging the trial court erred in denying his motion to suppress statements attributed to him by Trooper Keathley. First, Schroeder argues that Trooper Keathley's initial stop violated of the Fourth Amendment of the United States Constitution and article I, section 15 of the Missouri Constitution because Trooper Keathley did not observe a traffic violation prior to "pulling Schroeder over." Second, Schroeder asserts that Trooper Keathley improperly failed to issue a *Miranda* warning until after Keathley questioned Schroeder in the patrol car.

### Standard of Review

This Court reviews a trial court's ruling on a motion to suppress in the light most favorable to the ruling and defers to the trial court's determinations of credibility. *State v. Oliver*, 293 S.W.3d 437, 442 (Mo. banc 2009). The inquiry is limited to determining whether the decision is supported by substantial evidence. *Id.* Whether conduct violates the Fourth Amendment is an issue of law that this Court reviews *de novo. State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007).

### Analysis

The Fourth Amendment of the United States Constitution guarantees citizens the right to be free from "unreasonable seizures." The same analysis applies to cases under article I, section 15 of the Missouri Constitution. *Oliver*, 293 S.W.3d at 442.

### A. Trooper Keathley Lawfully Encountered Schroeder on the Roadside.

The Fourth and Fourteenth Amendments to the United States Constitution as well as article I, section 15 of the Missouri Constitution, prohibit any governmental search or seizure unless a law enforcement officer has a reasonable suspicion, "based on specific and articulable facts" that an occupant is or has been engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 20–21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).[4] Although *Terry's* facts involved a suspicion of criminal activity, nothing in the Fourth Amendment requires the "specific and articulable facts"

---

4. Reasonable suspicion—and therefore a traffic stop—may be based upon a traffic violation. *State v. Pike*, 162 S.W.3d 464, 473 (Mo. banc 2005). As explained in section III, Trooper Keathley observed Schroeder's failure to dim his headlights as he drove past

Schroeder's parked car, in violation of section 307.070. This observation, even if Trooper Keathley had stopped Schroeder without motives to help Schroeder, is independently sufficient to deem the initial encounter lawful.

to be limited to criminal activity. Insisting that every encounter be based on suspicion of criminal activity ignores law enforcement officers' community caretaking functions. The Supreme Court has acknowledged these functions, stating:

Some [police-citizen] contacts [involving automobiles] occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers ... frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

*Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

 Under the Fourth Amendment, a law enforcement officer may approach a vehicle for safety reasons, or if a motorist needs assistance, so long as the officer can point to reasonable, articulable facts upon which to base his actions. This requirement meets *Terry*'s threshold—it "warrant[s] a man of reasonable caution in the belief that the action taken [is] appropriate." 392 U.S. at 21–22, 88 S.Ct. 1868.

Other jurisdictions similarly allow law enforcement officers to approach motorists who need assistance, without requiring a reasonable suspicion of *criminal* activity. *See State v. Norman,* 136 Ohio App.3d 46, 735 N.E.2d 953, 958 (1999) ("a law enforcement officer may be justified in approaching a vehicle to provide assistance, without needing any reasonable basis to suspect criminal activity"); *Crauthers v. State,* 727 P.2d 9, 11 (Alaska App.1986) (a stop was permissible where motorist slowed and rolled down his window because the officer had a reasonable suspicion the motorist needed assistance); *State v. Pinkham,* 565 A.2d 318, 319 (Me.1989) (stops for "safety reasons alone can be sufficient if they are based upon 'specific and articulable facts' "); *State v. Marcello,* 157 Vt. 657, 599 A.2d 357 (1991) (a passing driver's utterance that another driver needed assistance was sufficient to justify a stop of the driver who supposedly needed help). *See also Provo City v. Warden,* 844 P.2d 360, 362 (Utah App.1992); *State v. Anderson,* 142 Wis.2d 162, 417 N.W.2d 411 (Wis.App. 1987) (reversed on other grounds); *State v. Goetaski,* 209 N.J.Super. 362, 507 A.2d 751, 752–3 (1986); *State v. Oxley,* 127 N.H. 407, 503 A.2d 756 (1985); *State v. Langseth,* 492 N.W.2d 298 (N.D.1992); *State v. Chisholm,* 39 Wash.App. 864, 696 P.2d 41, 43 (1985).

Here, Trooper Keathley provided sufficient reasons for approaching Schroeder on the roadside. Although Trooper Keathley approached Schroeder to take enforcement action for failure to dim headlights, he also initiated the encounter to determine if Schroeder needed roadside assistance. Schroeder was parked on the roadside at 2:00 a.m. with his bright headlights activated. This was a dangerous situation. Motorists typically require assistance while stranded on the roadside at night. These specific and articulable facts support a reasonable belief that Schroeder needed assistance. The encounter was lawful.

**B. The State Did Not Violate Schroeder's *Miranda* Rights.**

 *Miranda* warnings are not necessary during questioning pursuant to a routine traffic stop because traffic stops are analogous to a *"Terry* stop." *Berkemer v. McCarty,* 468 U.S. 420, 439–440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Roadside detention may only last for the time necessary to conduct a reasonable investigation. *State v. Barks,* 128 S.W.3d 513, 516 (Mo. banc 2004). A reasonable investi-

gation may include "asking for the driver's license, requesting the driver to sit in the patrol car, and asking the driver about his destination and purpose." *Id.* at 517. The officer must release the motorist unless the responses create probable cause. *Berkemer,* 468 U.S. at 429, 104 S.Ct. 3138.

The present facts are analogous to *State v. Keeth,* 203 S.W.3d 718 (Mo.App.2006). In *Keeth,* an officer investigated a one-car accident. *Id.* at 721. When the officer arrived, the driver involved slurred his speech and had difficulty keeping his balance. *Id.* The officer suspected that the driver was intoxicated. *Id.* The officer questioned the driver in his patrol car without a *Miranda* warning to confirm his suspicions, and the driver admitted to drinking "two or three beers." *Id.* Next, the officer administered a field sobriety test to further confirm his suspicions, which the defendant failed. *Id.* at 721–722. The court held that there was no *Miranda* violation because the officer's questions were minimal and did nothing more than confirm the officer's suspicions. *Id.* at 726.

■ Like in *Keeth,* Trooper Keathley formed a reasonable suspicion that a driver was intoxicated after an initial lawful encounter. During the initial encounter, Schroeder slurred his speech, had glassy and bloodshot eyes, and could not maintain his balance. These factors gave Trooper Keathley a reasonable suspicion that Schroeder was driving while intoxicated, and Trooper Keathley properly asked Schroeder limited questions to confirm his suspicions. A *Miranda* warning was not required. Next, Schroeder voluntarily performed and failed a field sobriety test.[5] This further confirmed Keathley's suspi-

cions. Trooper Keathley did not violate *Miranda.*

## V. Missouri's DWI Statutory Scheme Is Not Unconstitutionally Void For Vagueness.

Section 577.010.1 provides, "[a] person commits the crime of 'driving while intoxicated' if he operates a motor vehicle while in an intoxicated or drugged condition." Section 577.001.3 states that "a person is in an 'intoxicated condition' when he is under the influence of alcohol, a controlled substance, or drug, or any combination thereof."

Schroeder argues that sections 577.001 and 577.010, "Missouri's DWI statutory scheme," are void for vagueness because they (1) fail to give notice to drivers of what conduct is prohibited, (2) lack explicit standards necessary to avoid arbitrary and discriminatory application by the State, and (3) criminalize drivers in the unquantifiable state of being "under the influence" without a requirement that the driver's ability to operate a motor vehicle is impaired at all.

### Standard of Review

■ This court reviews constitutional challenges to statutes *de novo. State v. Spilton,* 315 S.W.3d 350, 357 (Mo. banc 2010). A statute is presumed to be valid and will not be declared unconstitutional unless it clearly contravenes a constitutional provision. *Id.*

### Analysis

■ The Fifth Amendment of the United States Constitution and article I, section 10 of the Missouri Constitution prohibit vague criminal statutes. The void for vagueness doctrine requires that a "penal statute define the criminal offense with

---

5. *Miranda* warnings are not required before administering field dexterity tests. The results of the tests are not testimonial or com-

municative; rather, they exhibit the degree of a person's physical coordination. *See* Am. Jr.2d Automobiles § 345.

sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

**A. Ordinary Persons Understand What is Meant by "Intoxicated Condition" and "Under the Influence."**

Missouri authority holds that ordinary persons understand what is meant by the terms "intoxicated condition" and "under the influence." In *State v. Johnson,* 55 S.W.2d 967, 968 (Mo.1932), this Court held that "[a]ny juror would readily understand what was meant by a charge of operating a motor vehicle while defendant was in an intoxicated condition." This Court added that an "attempt to define such words would tend to confuse rather than clarify the issues." *Id.*

In *State v. Raines,* 333 Mo. 538, 62 S.W.2d 727, 729 (1933), this Court held that:

> A jury would readily understand that what is meant by an "intoxicated condition" in connection with a charge of this nature is drunkenness to such an extent that it interferes with the proper operation of an automobile by the defendant.

*Id.* Since *Raines,* other Missouri courts have also recognized that a driver is in an "intoxicated condition" for purposes of a DWI prosecution if his use of alcohol impairs his ability to operate an automobile. *See State v. Cox,* 478 S.W.2d 339, 342 (Mo.1972); *State v. Hoy,* 219 S.W.3d 796, 801 (Mo.App.2007).

▆▆▆ Schroeder correctly states that some states have more specific definitions of "intoxicated" or "under the influence," but this is irrelevant to whether the language used in Missouri's statute is unconstitutionally vague. It is more instructive that no other jurisdiction has held that a DWI statute similar to Missouri's is unconstitutionally vague.

**B. Missouri's DWI Statutory Scheme Is Not Vague As Applied to Schroeder.**

▆▆▆ If a statute can be applied constitutionally to an individual, that person "will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." *State v. Self,* 155 S.W.3d 756, 760 (Mo. banc 2005) (a claim that a statute was unconstitutionally vague failed where the challenger did not present any evidence that she was unsure that she violated the statute or that the statute was unconstitutionally vague as applied to her situation).

Schroeder fails to point to any evidence that he was confused by the meaning of the statute. The facts show Schroeder was intoxicated by any definition. First, during the initial encounter with Trooper Keathley, Schroeder's eyes were bloodshot and glassy, he slurred his speech, and he repeatedly had difficulty keeping his balance. Second, an initial breath test was positive for the presence of alcohol. Third, Schroeder subsequently failed a field sobriety test Fourth, after failing the one-leg-stand test, Schroeder said, "I couldn't do this when I'm straight." Fifth, a horizontal-gaze-nystagmus test, in which Schroeder swayed throughout, showed his eyes lacked smooth pursuit. Sixth, Schroeder admitted to drinking six beers. Schroeder cannot reasonably claim that the law did not adequately notify him that he was too drunk to drive.

**VI. Conclusion**

For the foregoing reasons, the judgment is affirmed.

All concur.