

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | |
|---|---|
| STATE OF MISSOURI, | ) ED100723 |
| | ) |
| Respondent, | ) Appeal from the Circuit Court |
| | ) of Lewis County |
| v. | ) 12AR-CR00636-02 |
| | ) |
| JAMES E. STEELE, JR., | ) Honorable Karl A. DeMarce |
| | ) |
| Appellant. | ) Filed: February 10, 2015 |

## Introduction

James E. Steele, Jr. (Defendant) appeals the judgment entered upon his conviction after a jury found him guilty of driving while intoxicated (DWI). Defendant argues that the trial court erred in admitting statements he made during his initial traffic stop as evidence. Defendant contends that the officer obtained his statements in violation of his constitutional rights because the officer had not yet advised Defendant of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). We affirm.

## Background

The evidence, in the light most favorable to the denial of the motion to suppress and the verdict, showed the following.[1] On September 1, 2012, Sergeant Thomas Rohn

---

[1] State v. Loggins, 445 S.W.3d 105, 109 (Mo. App. E.D. 2014) (in review of denial of motion to suppress, appellate court views evidence in light most favorable to trial court's ruling).

(Sergeant Rohn) with the Missouri State Highway Patrol was traveling behind a vehicle on Missouri Highway 11, and he saw that vehicle cross the center line of the highway four times. Sergeant Rohn activated his emergency lights. The vehicle slowed, turned left onto a county road, and came to a stop.

Sergeant Rohn approached the driver, later identified as Defendant. Sergeant Rohn detected a very strong odor of an alcoholic beverage on Defendant's person, and he asked for Defendant's identification. Sergeant Rohn noticed that Defendant was fumbling through his wallet and had a hard time pulling out his identification. Sergeant Rohn asked Defendant to exit his vehicle. Defendant picked up a soda cup that was in his vehicle's console and began drinking very hard from the straw. Sergeant Rohn asked Defendant to stop, and Defendant initially did not comply. That was significant to Sergeant Rohn because he had already detected the odor of an alcoholic beverage, and he believed Defendant might be trying to mask the odor on his breath by drinking soda.

Defendant eventually exited his vehicle and complied with Sergeant Rohn's request to come and sit in the police vehicle. Sergeant Rohn testified that for his own safety and the safety of the driver, he regularly asks drivers to come sit in his vehicle during a traffic stop. As Defendant was walking to the police vehicle, Sergeant Rohn observed him to be swaying back and forth and unsteady on his feet. Sergeant Rohn asked Defendant to sit in the passenger seat of the police vehicle. Defendant did so, but he left his right foot outside the vehicle and left the door open. Sergeant Rohn sat in the driver's seat of the police vehicle.

Less than five minutes after Defendant got into the police vehicle, Sergeant Rohn asked Defendant whether Defendant had had anything to drink. Defendant responded

2

that he had drunk seven or eight beers. Defendant's speech was slurred and he was difficult to understand. Sergeant Rohn asked Defendant if he would submit to a field sobriety test. Defendant's eyes were "glossy" and he just stared at Sergeant Rohn. Sergeant Rohn asked again, and Defendant refused. Sergeant Rohn also asked whether Defendant would submit to a preliminary breath test, and Defendant refused. Sergeant Rohn asked Defendant to close the passenger door, and Defendant complied. Defendant then said, "I guess I'm going to jail." At that point, Sergeant Rohn had Defendant exit the vehicle, and he placed Defendant under arrest for DWI. Sergeant Rohn estimated that this entire encounter with Defendant lasted eight minutes.

The State charged Defendant as a chronic-DWI offender and a prior and persistent offender with DWI (Count I), driving while his license was suspended or revoked (Count II), and failing to drive on the right side of the road (Count III). Before trial, Defendant pled guilty to Count II, and the State dismissed Count III. Defendant's subsequent jury trial on Count I, DWI, ended in a mistrial because the jury could not arrive at a unanimous verdict.

Before Defendant's second jury trial on the charge of DWI, Defendant filed a motion to suppress his statement to Sergeant Rohn that he had consumed seven or eight beers.[2] Defendant argued his statement was inadmissible because Sergeant Rohn did not advise Defendant of his Miranda rights prior to asking Defendant whether he had had anything to drink that night. After a hearing on the motion to suppress, the trial court denied it. The jury found Defendant guilty of DWI, and the trial court sentenced

---

[2] Prior to Defendant's first trial, the State and Defendant stipulated that no evidence of this statement would be presented. During argument on the motion to suppress in Defendant's second trial, the trial court found that the prior stipulation had no bearing on the present motion.

3

Defendant as a chronic-DWI offender and as a prior and persistent felony offender to twelve years' imprisonment. This appeal follows.

## Discussion

Defendant asserts two points on appeal, both of which raise the issue of at what point a traffic stop becomes a custodial interrogation, requiring an officer to protect the driver's constitutional rights by giving the driver <u>Miranda</u> warnings before obtaining any testimonial statements. First, Defendant argues that the trial court erred in denying his motion to suppress because Sergeant Rohn obtained Defendant's statement that he had consumed seven or eight beers before advising Defendant of his <u>Miranda</u> rights. Similarly, Defendant argues in Point II that the trial court plainly erred in allowing the State to present evidence that Defendant refused to submit to field sobriety tests because Sergeant Rohn had not yet advised Defendant of his <u>Miranda</u> rights.

## Standard of Review

Regarding Point I, our review of a trial court's ruling on a motion to suppress is limited to a determination of "whether the decision is supported by substantial evidence, and it will be reversed only if clearly erroneous." <u>State v. Oliver</u>, 293 S.W.3d 437, 442 (Mo. banc 2009). We defer to the trial court's credibility determinations and view the evidence in the light most favorable to the trial court's ruling, but questions of law we review *de novo*. <u>Id.</u> We consider evidence from the evidentiary hearing on the motion to suppress as well as any additional evidence presented at trial. <u>Id.</u>

Regarding Point II, Defendant concedes it is unpreserved and requests that we review this claim for plain error under Rule 30.20.[3] Our determination of whether to grant such review consists of two steps. First, we ascertain whether an evident, obvious,

---

[3] All rule references are to Mo. R. Crim. P. (2014) unless otherwise indicated.

and clear error affecting substantial rights of the defendant appears from the record. State v. Washington, 260 S.W.3d 875, 879 (Mo. App. E.D. 2008). If we find such an error, we determine whether it resulted in manifest injustice or a miscarriage of justice. Id.

Point I

Defendant argues that the trial court clearly erred in denying his motion to suppress because Sergeant Rohn was required to advise Defendant of his Miranda rights before soliciting his statement that he had consumed seven or eight beers. We disagree.

In Miranda v. Arizona, the United States Supreme Court determined that certain procedural safeguards are required in the context of custodial interrogation in order to protect a suspect's Fifth Amendment privilege against compelled self-incrimination. 384 U.S. 436 (1966). The Court stated these safeguards apply whenever "a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444. If the police fail to advise a suspect who is in custody of his or her rights under Miranda, any incriminating statements made during interrogation will not be admissible as evidence against the suspect. Berkemer v. McCarty, 468 U.S. 420, 429 (1984).

The United States Supreme Court has since further defined contexts that constitute custodial interrogation and trigger the requirements of Miranda. In Berkemer v. McCarty, the Court specifically considered "the roadside questioning of a motorist detained pursuant to a routine traffic stop." 468 U.S. at 435. The Court declined to adopt a bright-line rule, but concluded that in most instances, despite the fact that the motorist's freedom of action is restricted, Miranda warnings are not required. Id. at 437

5

("declin[ing] to accord talismanic power" to phrase "deprived of his freedom of action" from Miranda opinion).

The Supreme Court reasoned that there are two features of an ordinary traffic stop that mitigate the dangers present in custodial interrogations at a police station. Id. at 437. First, unlike interrogations at a police station, which are prolonged, a traffic stop is "presumptively temporary and brief," and a motorist has an expectation that at the end of the stop he or she will "most likely be allowed to continue on his [or her] way." Id. Second, "circumstances associated with the typical traffic stop are not such that the motorist feels completely at the mercy of the police." Id. at 438. Those circumstances noted by the Court are that the stop occurs in public, and only one or two policemen confront the motorist, which "further mutes [the motorist's] sense of vulnerability." Id. All of this led the Court to consider routine traffic stops more akin to "Terry stops" than formal arrests, the former of which do not trigger Miranda requirements.[4] Id. at 439.

The Missouri Supreme Court has since applied Berkemer in the context of a traffic stop involving an officer's suspicion that a driver has committed DWI. See State v. Schroeder, 330 S.W.3d 468 (Mo. banc 2011). The court reaffirmed that Miranda warnings are not necessary during a routine traffic stop, while cautioning that "[r]oadside detention may only last for the time necessary to conduct a reasonable investigation." Schroeder, 330 S.W.3d at 473. "A reasonable investigation may include asking for the driver's license, requesting the driver to sit in the patrol car, and asking the driver about

---

[4] Terry v. Ohio, 392. U.S. 1, 27 (1968), and its progeny have established the rule that an officer who lacks probable cause but has a reasonable suspicion that a person is involved in a crime may briefly detain that person in order to investigate the circumstances giving rise to the officer's suspicion. Berkemer v. McCarty, 468 U.S. 420, 439 (1984) (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 881 (1975)). That brief detention is known as a "Terry stop." During such a stop, the detainee is not obliged to respond to questions, and if the officer fails to develop probable cause to arrest, the detainee must be released. Id. at 439-440.

6

his destination and purpose." Id. at 473-74 (quoting State v. Barks, 128 S.W.3d 513, 517 (Mo. banc 2004)) (internal quotation omitted). If the driver's responses do not give rise to probable cause, the officer must release the driver. Schroeder, 330 S.W.3d at 474 (citing Berkemer, 468 U.S. at 429).

In Schroeder, the Missouri Supreme Court determined that an officer formed a reasonable suspicion that a driver was intoxicated after an initial encounter during which the driver had slurred speech, glassy and bloodshot eyes, and could not maintain his balance. 330 S.W.3d at 474. After observing these things, the officer asked to see the driver's identification and had asked the driver to sit in the officer's police car. The officer also asked the driver whether he had been drinking, and the driver said he had drunk six beers. Id. at 471. The court concluded that because the officer asked limited questions to confirm his reasonable suspicion of DWI, no Miranda warnings were required. Id. at 474; see also State v. Keeth, 203 S.W.3d 718, 726 (Mo. App. S.D. 2006) (officer did not violate Miranda when officer, after observing odor of alcoholic beverage, red eyes, slurred speech, and stumbling, asked driver whether he had anything to drink), cited with approval in Schroeder, 330 S.W.3d at 474.

Here, the traffic stop took place on a public road and lasted eight minutes. Defendant was confronted by only one officer. As in Schroeder, Defendant here exhibited several signs of being intoxicated, giving rise to Sergeant Rohn's reasonable suspicion. Sergeant Rohn asked Defendant for his identification, and he asked Defendant to sit in his police car to ensure the safety of both of them. Sergeant Rohn asked limited questions in order to confirm his suspicion that Defendant was intoxicated, and

7

Defendant was free not to answer. No Miranda warnings were required at the point Sergeant Rohn asked whether Defendant had had anything to drink.

Defendant seeks to distinguish Schroeder by arguing that rather than merely asking questions to confirm his suspicion of DWI, Sergeant Rohn had already determined to arrest Defendant, and therefore he should have advised Defendant of his rights per Miranda. The Berkemer Court rejected the same argument, saying that where the officer has not communicated any intention to arrest the driver, such "unarticulated plan has no bearing on the question whether [the driver is] 'in custody.'" 468 U.S. at 442. "[T]he only relevant inquiry is how a reasonable man in the [driver]'s position would have understood his situation." Id. Here, though Defendant's freedom of action was hindered, Sergeant Rohn detained Defendant for a short period of time and did not indicate the stop was anything other than temporary.[5] At the point Sergeant Rohn's suspicions were confirmed, he formally arrested Defendant.

We note Defendant's argument that Sergeant Rohn should have given Defendant Miranda warnings because he knew his question about what Defendant had had to drink was likely to elicit an incriminating statement. See Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). Though the likelihood of eliciting an incriminating response is a factor in determining whether a suspect is in custody for purposes of Miranda, "[c]ustody is determined by an examination of the totality of the circumstances." State v. Werner, 9 S.W.3d 590, 595 (Mo. banc 2000). Given all the circumstances present here,

---

[5] Defendant adds that his statement "I guess I'm going to jail" confirms his perception that he was "in custody" when he admitted to drinking seven or eight beers. However, he made this statement after he had told Sergeant Rohn how much alcohol he had consumed and after he refused to submit to field sobriety tests and a preliminary breath test, just before Sergeant Rohn did formally arrest him. Regardless, the determination of custody depends on objective circumstances, not the subjective views of either the officer or the detainee. Stansbury v. California, 511 U.S. 318, 323 (1994).

8

Defendant's detention at the time he told Sergeant Rohn he had consumed seven or eight beers "cannot fairly be characterized as the functional equivalent of a formal arrest." Berkemer, 468 U.S. at 442; see also Schroeder, 330 S.W.3d at 474; State v. Keeth, 203 S.W.3d 718, 726 (Mo. App. S.D. 2006). Point denied.

## Point II

Defendant argues the trial court plainly erred in allowing the State to present evidence that Defendant refused to perform field sobriety tests because Defendant did so prior to being advised of his Miranda rights. We disagree.

As we discussed in Point I, the requirements of Miranda are triggered any time a suspect is questioned "in custody." We concluded that while Defendant was seated in Sergeant Rohn's police vehicle, when Sergeant Rohn asked Defendant whether he had drunk anything that night, Defendant was not in custody for purposes of Miranda. We find the same is true at the time of Sergeant Rohn's subsequent request that Defendant perform field sobriety tests.

In South Dakota v. Neville, the United States Supreme Court found that evidence of a defendant's refusal to submit to a blood-alcohol test, in a state where the defendant is permitted to refuse, does not violate the Fifth Amendment. 459 U.S. 553, 560-62 (1983). The Court rested its decision on the grounds that "no impermissible coercion [wa]s involved when the suspect refuses to submit to take the test." Id. at 562. We find the circumstance of an officer's request during a traffic stop that a driver submit to a field sobriety test similarly free of impermissible coercion.

Here, the same circumstances were present when Sergeant Rohn asked Defendant whether he had had anything to drink and when Sergeant Rohn asked whether Defendant

would perform field sobriety tests. Defendant was seated in the passenger seat of Sergeant Rohn's police vehicle, with the door open and his right foot outside the vehicle. Less than five minutes after Defendant sat down, Sergeant Rohn asked how much he had had to drink. Defendant answered, and Sergeant Rohn next asked Defendant if he would perform field sobriety tests. We fail to detect any circumstances in between these two questions that converted this encounter into a custodial interrogation.[6]

This is also consistent with Schroeder, in which the Missouri Supreme Court stated "Miranda warnings are not required before administering field dexterity tests." 330 S.W.3d at 474 n.5. The court considered administering the tests to be part of the officer's process of confirming his suspicions about whether the driver was intoxicated, and the court concluded the officer did not violate Miranda. Id. at 474.

Because Sergeant Rohn was still in the process of asking reasonable questions to confirm his suspicion that Defendant committed DWI, for the same reasons present in Point I, we conclude no Miranda warnings were required when Sergeant Rohn asked Defendant to perform field sobriety tests. We find no evident, obvious, or clear error in the trial court's admission of Defendant's refusal. Point denied.

## Conclusion

Sergeant Rohn lawfully conducted a traffic stop and briefly detained Defendant regarding his reasonable suspicion that Defendant had committed DWI. He asked limited questions related to that suspicion, and once his suspicion was confirmed, he formally

---

[6] While Defendant argues that modern field sobriety tests subject suspects to a prolonged detention that should be considered custodial under Miranda, this is irrelevant here, where Defendant refused. In any event, the defendant in Schroeder submitted to two of the three field sobriety tests mentioned by Defendant, and the defendant in Keeth submitted to three unspecified tests. Schroeder, 330 S.W.3d at 471; Keeth, 200 S.W.3d at 722. Both courts found no error in admitting the results of these tests, and in both cases the officers did not give Miranda warnings prior to administering the tests. Schroeder, 330 S.W.3d at 474; Keeth, 200 S.W.3d at 726.

10

arrested Defendant and advised Defendant of his <u>Miranda</u> rights. Until that point, no <u>Miranda</u> warnings were required, and the trial court did not err in admitting Defendant's statements made during that time period. We affirm.

_____
Gary M. Gaertner, Jr., Judge

Kurt S. Odenwald, P. J., concurs.
Robert G. Dowd, Jr., J., concurs.