

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD82018 |
| | ) | |
| DEAN ALAN RIGSBY, | ) | FILED: November 19, 2019 |
| Appellant. | ) | |

**Appeal from the Circuit Court of Johnson County
The Honorable Chad N. Pfister, Judge**

**Before Special Division: Thomas H. Newton, P.J., and
Alok Ahuja and Thomas N. Champan, JJ.**

Dean Rigsby was convicted of driving while intoxicated following a bench trial in the Circuit Court of Johnson County. The court found that Rigsby was a persistent offender based on his prior convictions for driving-related offenses in 2005 and 2006 in Illinois. The court therefore entered a conviction for a class D felony, and sentenced Rigsby accordingly. Rigsby appeals. He argues that the circuit court erred in finding him to be a persistent offender, because the offense of which he was convicted in 2005 does not qualify as an "intoxication-related traffic offense" under § 577.023.1(4).[1] We agree. Rigsby's conviction and sentence for driving while intoxicated are reversed, and the case is remanded to the circuit court for entry of a conviction of driving while intoxicated as a class B misdemeanor, and resentencing accordingly.

---

[1] Unless otherwise indicated, statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, as updated through the 2015 noncumulative supplement.

## Factual Background

On March 10, 2016, just before 11:00 p.m., Officer Ryan Easley of the Warrensburg Police Department observed a Ford F-150 truck drive past his vehicle without any headlights on.[2] Officer Easley then observed the truck roll through a stop sign without coming to a complete stop. Officer Easley conducted a traffic stop.

Rigsby was driving the truck. When he approached the vehicle, Officer Easley smelled the odor of alcohol and noticed that Rigsby's eyes were bloodshot and glassed over. Rigsby was nonresponsive and confused when Officer Easley asked for his driver's license and proof of insurance. Once Officer Easley secured Rigsby's Illinois driver's license, a records check revealed that it had been revoked.

After being read his *Miranda*[3] rights, Rigsby stated that he had consumed three "Millers" that evening. Officer Easley requested that Rigsby step out of the truck. As Rigsby exited, he stumbled and held on to the vehicle for balance. After Rigsby failed multiple field sobriety tests, Officer Easley placed him under arrest. Rigsby was transported to the police station, where he refused to cooperate with a breath test.

The State charged Rigsby with two counts: the class D felony of driving while intoxicated as a persistent offender; and a misdemeanor count of driving while his license was revoked.

Rigsby waived his right to a jury trial. Before evidence was presented, the circuit court conducted a hearing concerning Rigsby's status as a persistent offender. At the hearing the State presented two exhibits, which were admitted without objection, concerning Rigsby's previous Illinois convictions. Exhibit 1 addressed Rigsby's 2006 conviction for driving under the influence of alcohol in St.

---

[2]     By the time of trial, Officer Easley was employed as a Deputy with the Jackson County Sheriff's Department.

[3]     *Miranda v. Arizona*, 384 U.S. 436 (1966).

Clair County, Illinois. Exhibit 2 contained 80 pages of records relating to Rigsby's 2005 conviction in Johnson County, Illinois, for driving with marijuana in his breath, blood, or urine.

In addition to Exhibit 2, the State called Illinois State Police Captain Greg Kilduff to testify regarding Rigsby's 2005 conviction. Captain Kilduff testified that on March 18, 2005, at a little after 10:00 p.m., he observed a vehicle pull into the parking lot of a gas station which was closed near Goreville, Illinois. Captain Kilduff made contact with the occupants of the vehicle because he thought "somebody was going to try to break in or [the occupants] were up to something."

Rigsby was the vehicle's driver; he was accompanied by a passenger. Captain Kilduff testified that he "smelled a strong odor of burnt cannabis" when he approached the vehicle. He testified that Rigsby "had somewhat of a sleepy appearance," "his eyes were glassy," and that his speech "was kind of slow and thick tongued." Rigsby failed multiple field sobriety tests. A preliminary breath test was negative for alcohol.

After obtaining Rigsby's consent, Captain Kilduff searched the vehicle and found a little over fourteen grams of cannabis along with rolling papers. The vehicle's passenger stated that the cannabis was his, and that "he had smoked cannabis about two hours prior to the stop with Mr. Rigsby." Rigsby was then arrested for driving with cannabis in his system.

Based on the State's exhibits and Captain Kilduff's testimony, the circuit court found beyond a reasonable doubt that Rigsby was a persistent offender due to his two prior Illinois convictions.

The circuit court then held a bench-trial and found Rigsby guilty of both driving while intoxicated and driving while revoked. The circuit court imposed a three-year sentence for the driving while intoxicated conviction, but suspended the

3

execution of the sentence and placed Rigsby on probation for five years. The court imposed a $250 fine for the driving while revoked count.

Rigsby appeals. On appeal, he challenges only his conviction and sentence for driving while intoxicated.

**Standard of Review**

We review the sufficiency of the evidence in a court-tried criminal case under the same standard used in a jury-tried case. The State has the burden to prove prior intoxication-related traffic offenses beyond a reasonable doubt. Under section 577.023, the State need only present sufficient facts to support a finding beyond a reasonable doubt the defendant either pled guilty or was found guilty of two prior intoxication related traffic offenses. In making that determination, we accept as true all evidence to prove the prior offenses together with all reasonable inferences that support the circuit court's finding.

*State v. Coday*, 496 S.W.3d 572, 574 (Mo. App. W.D. 2016) (citations and internal quotation marks omitted).

**Analysis**

Rigsby argues that the circuit court erred in convicting him of driving while intoxicated *as a persistent offender*, because his 2005 Johnson County, Illinois conviction does not qualify as an "intoxication-related traffic offense." Rigsby does not dispute the circuit court's finding that his 2006 conviction constitutes an "intoxication-related traffic offense."

At the time of Rigsby's Missouri offense, a first offense of driving while intoxicated was classified as a class B misdemeanor. § 577.010.2(1). If the defendant was proved to be a persistent offender, however, the offense was enhanced to a class D felony. § 577.023.3. A "persistent offender" was defined as "[a] person who has pleaded guilty to or has been found guilty of two or more intoxication-related traffic offenses." § 577.023.1(5)(a).

The relevant statutes provided that "[a]n 'intoxication-related traffic offense' is driving while intoxicated . . . or driving under the influence of alcohol or drugs in

4

violation of state law or a county or municipal ordinance." § 577.023.1(4). Section 577.023.16 provided that "[a] plea of guilty or a finding of guilt . . . in any intoxication-related traffic offense in a state, county or municipal court or any combination thereof shall be treated as a prior plea of guilty or finding of guilt for purposes of this section."

In order to determine whether Rigsby's 2005 Illinois offense qualifies as an "intoxication-related traffic offense," we must determine if it is the equivalent of one of the crimes listed in the definition of an "intoxication-related traffic offense" in § 577.023.1(4). To do so we apply the Missouri-law definitions of the listed offenses, as those offenses were defined at the time of Rigsby's current offense. *State v. Gibson*, 122 S.W.3d 121, 128–30 (Mo. App. W.D. 2003); *State v. Brown*, 97 S.W.3d 97, 103 (Mo. App. W.D. 2002).

In this case, Rigsby's 2005 conviction in Johnson County, Illinois, was for "[d]riving while under the influence of alcohol, other drug or drugs, intoxicating compound or compounds or any combination thereof" in violation of 625 Ill. Comp. Stat. Ann. § 5/11-501 (2005). The title of that offense – standing alone – might suggest that the offense qualified as an "intoxication-related traffic offense." The name given to the offense is not controlling, however. In *State v. Coday*, a defendant had previously pleaded guilty in Kansas to the offense of "driving while under [the] influence of alcohol and/or drugs" in violation of Kan. Stat. Ann. § 8-1567. 496 S.W.3d at 576. The _title_ of the Kansas offense suggested that the defendant's prior conviction fell within § 577.023.1(4)'s definition of an "intoxication-related traffic offense." *See id.* at 575-76. Despite the offense's title, *Coday* held that it did not constitute an "intoxication-related traffic offense." The Court noted that, under Kansas law, the offense could be committed if an intoxicated individual "operate[d] or *attempt[ed] to operate*" a motor vehicle. *Id.* at 574 (quoting Kan. Stat. Ann. § 8-1567(a) (emphasis added by *Coday*)). In Missouri,

5

however, "convictions for 'attempting to operate' a vehicle while intoxicated do not constitute intoxication-related traffic offenses." *Id.* at 576. Accordingly, "the fact that the State's exhibits showed that Coday pled guilty to two offenses of 'driving while under influence of alcohol and/or drugs' in violation of Kan. Stat. Ann. § 8–1567 did not establish beyond a reasonable doubt that Coday did in fact *operate* a vehicle while under the influence of alcohol and drugs." *Id.* Because the State presented no additional evidence to establish that the defendant's Kansas convictions were based on his actual operation of a vehicle, "there was no evidence upon which the circuit court could base its finding that [the defendant] was a persistent DWI offender," and that finding was reversed. *Id.* at 578.

In this case, the record before the trial court contained evidence which conclusively demonstrated that, despite its title, the offense of which Rigsby was convicted did not qualify as an intoxication-related traffic offense. At the time of Rigsby's conviction in 2005, 625 Ill. Comp. Stat. Ann. § 5/11-501(a) provided:

> (a)   A person shall not drive or be in actual physical control of any vehicle within this State while:
>
> (1)   the alcohol concentration in the person's blood or breath is 0.08 or more based on the definition of blood and breath units in Section 11-501.2;
>
> (2)   under the influence of alcohol;
>
> (3)   under the influence of any intoxicating compound or combination of intoxicating compounds to a degree that renders the person incapable of driving safely;
>
> (4)   under the influence of any other drug or combination of drugs to a degree that renders the person incapable of safely driving;
>
> (5)   under the combined influence of alcohol, other drug or drugs, or intoxicating compound or compounds to a degree that renders the person incapable of safely driving; or
>
> (6)   ***there is any amount of a drug***, substance, or compound ***in the person's breath, blood, or urine resulting from the unlawful use or consumption of cannabis*** listed in

6

> the Cannabis Control Act, a controlled substance listed in the Illinois Controlled Substances Act, or an intoxicating compound listed in the Use of Intoxicating Compounds Act.

(Emphasis added.) The documents contained in State's Exhibit 2 make clear that Rigsby was convicted in 2005 of violating subsection (a)(6). Thus, he was convicted for driving or being in actual physical control of a vehicle while "there [was] any amount of a drug . . . in [his] breath, blood or urine resulting from the unlawful use or consumption of cannabis . . . ." § 5/11-501(a)(6).

The Illinois Supreme Court has held that the offense of which Rigsby was convicted in 2005 did _not_ require that he in fact be impaired by the presence of cannabis in his body. The Court explained that subsection (a)(6) "creates an absolute bar against driving a motor vehicle following the illegal ingestion of any cannabis or controlled substance. ***This is without regard to physical impairment***." *People v. Fate*, 636 N.E.2d 549, 551 (Ill. 1994) (emphasis added); *see also People v. Rodriguez*, 926 N.E.2d 390, 392–94 (Ill. App. 2009).

In Missouri, by contrast, an individual can be convicted of driving under the influence of a drug only if that person is _impaired_ by the drug. In Missouri, "[a] person commits the crime of 'driving while intoxicated' if he operates a motor vehicle while in an intoxicated or drugged condition." § 577.010.1. "'Drugged condition' has been equated with 'intoxicated condition' and, as a result, the two terms may be used interchangeably." *State v. Honsinger*, 386 S.W.3d 827, 830 (Mo. App. S.D. 2012) (citation omitted). Section 577.001.3 provides that "a person is in an 'intoxicated condition' when he is under the influence of alcohol, a controlled substance, or drug, or any combination thereof." § 577.001.3. In Missouri, "'[u]nder the influence . . .' has long been described as '[a]ny intoxication that in any manner impairs the ability of a person to operate an automobile.'" *State v. Hoy*, 219 S.W.3d 796, 801 (Mo. App. S.D. 2007). "Intoxication under Missouri's statute requires proof that the consumption of alcohol or drugs interferes or impairs the defendant's

7

ability to properly operate an automobile." *Rocha v. Dir. of Revenue*, 557 S.W.3d 324, 327 (Mo. App. W.D. 2018) (citing *State v. Schroeder*, 330 S.W.3d 468, 475 (Mo. 2011)).

Thus, Rigsby was convicted in 2005 of an Illinois offense which is defined "without regard to physical impairment." *Fate*, 636 N.E.2d at 551. In Missouri, however, an individual can only be convicted of driving while intoxicated or driving under the influence of alcohol or drugs if the individual's consumption of alcohol or drugs "interferes [with] or impairs the defendant's ability to properly operate an automobile." *Rocha*, 557 S.W.3d at 327. Rigsby's 2005 Illinois offense did not contain all of the elements of the Missouri offenses of driving while intoxicated or driving under the influence of alcohol or drugs. Because Rigsby's 2005 Illinois conviction lacked the essential element of impairment, that conviction cannot constitute an "intoxication-related traffic offense" within the meaning of § 577.023.1(4).

To avoid this result, the State attempts to rely on extrinsic evidence of the circumstances surrounding Rigsby's 2005 offense, including information derived from police reports and other documents, and from the testimony of the arresting officer, Captain Greg Kilduff. The State relies on this evidence to argue that the *underlying facts* would have satisfied Missouri's "impairment" standard, even though impairment was not an element of the offense to which Rigsby actually pleaded guilty.

It is not appropriate to consider facts beyond those actually underlying a prior conviction, to determine if the prior offense constitutes an "intoxication-related traffic offense." The definition of a "persistent offender" focuses on whether the defendant "has pleaded guilty to or has been found guilty of two or more intoxication-related traffic offenses." § 577.023.1(5)(a). The focus is on *the offense to which Rigsby pleaded guilty* – not some other, hypothetical offense which the

8

underlying facts might have supported. *Coday* recognizes that only the facts necessary to establish the offense of conviction are relevant: to determine whether a foreign offense constitutes an intoxication-related traffic offense, "we must determine whether ***the acts constituting the foreign conviction*** constitute the commission of [a listed] crime under Missouri law." 496 S.W.3d at 576 (emphasis added; citation omitted); *see also State v. Hill*, 839 S.W.2d 605, 608 (Mo. App. W.D. 1992) ("the test is whether ***the acts committed during the commission of the foreign crime*** would constitute the commission of one of the crimes mentioned in" a recidivism statute; emphasis added; citation omitted).

Here, Rigsby did not plead guilty in 2005 to driving *while impaired*, and impairment was *not* one of "the acts constituting the foreign conviction." The fact that the State may have been able to prove *additional facts*, beyond those underlying the offense to which Rigsby pleaded guilty, is irrelevant in determining whether Rigsby pleaded guilty in 2005 to an "intoxication-related traffic offense." In a criminal case, prosecutors or law enforcement may frequently have knowledge of facts which would support charging a defendant with different, additional, or more serious offenses than the charges of which a defendant is ultimately convicted. This is particularly true where a defendant pleads guilty. A central aspect of plea bargaining is that the State may choose to reduce the charges against a defendant – even though greater or additional charges are factually warranted – in order to induce a guilty plea. In order to determine whether a defendant is a "persistent offender" under § 577.023.1(5)(a), the critical question is the nature of the charges to which the defendant *actually pleaded guilty*; the inquiry is not whether the prosecution could potentially have proven the elements of different, additional, or more serious offenses. The "persistent offender" inquiry is not an opportunity for the State to retry the facts underlying a defendant's prior convictions.

9

The approach to recidivism determinations taken in the Missouri cases is similar to the approach taken by federal courts in applying recidivism provisions in federal statutes. In that context, the Supreme Court of the United States has held that a statute's reference to a defendant's prior "convictions" "supports the inference that Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and *not to the facts underlying the prior convictions*." *Taylor v. United States*, 495 U.S. 575, 600 (1990) (emphasis added). Under this "categorical" approach, the court must look "to the elements of the statute of conviction, *not to the facts of each defendant's conduct*." *Id.* at 601 (emphasis added). As we recently explained,

> The U.S. Supreme Court has interpreted the use of words such as "conviction" and "element" to indicate that Congress meant for the statutory definition to cover a generic offense, implicating the categorical or modified categorical framework, *which eschews looking to a conviction's circumstances*. Because the categorical approach looks squarely at the elements of the offense of conviction, *a reviewing court is precluded from examining the circumstances underlying the prior conviction*.

*Peters v. Jackson Cnty. Sheriff*, 543 S.W.3d 85, 88–89 (Mo. App. W.D. 2018) (emphasis added; citations and internal quotation marks omitted).

The Supreme Court in *Taylor* explained that the "factual approach" (on which the State attempts to rely in this case) would raise significant administrative and equity concerns:

> [T]he practical difficulties and potential unfairness of a factual approach are daunting. In all cases where the Government alleges that the defendant's actual conduct would fit the [definition of a relevant offense], the trial court would have to determine what that conduct was. In some cases, the indictment or other charging paper might reveal the theory or theories of the case presented to the jury. In other cases, however, only the Government's actual proof at trial would indicate whether the defendant's conduct constituted [a relevant offense]. Would the Government be permitted to introduce the trial transcript before the sentencing court, or if no transcript is available, present the testimony of witnesses? Could the defense present

10

witnesses of its own and argue that the jury might have returned a guilty verdict on some theory that did not require a finding that the defendant committed [all of the elements of the relevant crime]? If the sentencing court were to conclude, from its own review of the record, that the defendant actually committed a [relevant offense], could the defendant challenge this conclusion as abridging his right to a jury trial? Also, in cases where the defendant pleaded guilty, there often is no record of the underlying facts. Even if the Government were able to prove those facts, if a guilty plea to a lesser . . . offense was the result of a plea bargain, it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty to [the greater relevant offense].

495 U.S. at 601–02.

Under both Missouri law and federal law, a trial court may go beyond the specific elements of the prior offense, and review the underlying facts, in only one circumstance: where the statute defining the prior offense provides that the offense could be committed in multiple ways, only some of which would support a recidivist finding. Thus, *Coday* recognized that some further factual inquiry would be appropriate where the Kansas statute under which the defendant was previously convicted criminalized both an intoxicated person's operation and attempted operation of a motor vehicle, but only *actual operation* would constitute an intoxication-related traffic offense. The Court explained that, "[i]n such circumstances, when a foreign conviction encompasses acts outside of those prohibited by Missouri statutes, the test is whether the acts committed during the commission of the foreign crime would qualify as an intoxication-related traffic offense under section 577.023." 496 S.W.3d at 576 (citation omitted). *Taylor* recognized the same possibility, with respect to a prior conviction of burglary:

We think the only plausible interpretation of [the federal recidivism statute] is that . . . it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense. This categorical approach, however, may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary. For example, in a State whose burglary statutes include entry of an automobile [which would not qualify as a

11

relevant prior conviction] as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.

495 U.S. at 602 (footnote omitted).

This is not a case in which the exception to the categorical approach is applicable. The statute under which Rigsby was convicted in 2005, 625 Ill. Comp. Stat. Ann. § 5/11-501(a)(6), does not provide for multiple means in which the offense could be committed, some of which involve impairment and others not. Instead, the Illinois Supreme Court has held that a defendant could be convicted under subsection (a)(6) "without regard to physical impairment." *Fate*, 636 N.E.2d at 551. This is not a case in which the State sought to prove _how_ Rigsby committed his 2005 offense, among multiple possible methods. Instead, the State sought to prove additional facts which were *unnecessary*, and unrelated, to the crime to which Rigsby pleaded guilty. As we have explained above, the State's attempt to re-litigate the circumstances underlying Rigsby's 2005 Illinois conviction was improper.

We accordingly hold that the circuit court erroneously found that Rigsby's 2005 Illinois conviction was for an "intoxication-related traffic offense." The circuit court's finding that Rigsby was a "persistent offender" must accordingly be vacated. Rigsby does not qualify as a "_prior_ offender" either, because the definition of a prior offender requires that the defendant's previous conviction have occurred "within five years of the occurrence of the intoxication-related traffic offense for which the person is charged." § 577.023.1(6). Although Rigsby does not dispute that his 2006 conviction in St. Clair County, Illinois satisfies the statutory definition of an "intoxication-related traffic offense," that offense did not occur within five years of Rigsby's current offense, and it therefore cannot provide the basis for a "prior

offender" finding.  Rigsby could properly be convicted and sentenced, therefore, only of the base offense of driving while intoxicated as a class B misdemeanor.

## Conclusion

Rigsby's conviction and sentence of the class D felony of driving while intoxicated is reversed.  The case is remanded to the circuit court for entry of a conviction of the class B misdemeanor of driving while intoxicated, and resentencing accordingly.  Rigsby's conviction and sentence for driving while revoked is unaffected by this opinion.

_____
Alok Ahuja, Judge

All concur.

13