**STATE of Missouri, Appellant,**

v.

**William H. RIDDLE, Respondent.**

**No. 62536.**

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 15, 1992.

John T. Archer, Asst. Pros. Atty., Clayton, for appellant.

Burton H. Shostak, Clayton, for respondent.

CRIST, Judge.

The State filed an interlocutory appeal from the trial court's order suppressing physical evidence. The trial court granted Defendant's motion to suppress when it found the evidence had been seized in violation of Defendant's Fourth Amendment rights. We affirm.

Trooper Moore testified to the following: On January 23, 1990, at approximately 10:15 a.m., Defendant was travelling east on Highway 44 in St. Louis County, Missouri, in a 1990 Ford Tempo with Texas license plates. Defendant was travelling in the center lane of three lanes. Trooper Moore, who had been parked on the side of the road, pulled onto the highway and into the lane next to the median. As Defendant approached the intersection of Highway 44 and 141, a dump truck with a trailer pulled over in front of him. At this time, Trooper Moore observed that Defendant's car was within fifteen feet of the dump truck and following too closely, thereby violating

state law. After Defendant travelled four-tenths of a mile behind the dump truck, Trooper Moore pulled Defendant over.

As Trooper Moore approached Defendant's car, he got out and walked toward him. They met at the rear of the car. Trooper Moore asked him for his driver's license, which he produced. When Trooper Moore asked him for his car registration, he produced a rental car agreement. The agreement showed the car was rented to James Alan Junkins, but Defendant was listed as an additional driver. Defendant told Moore that Junkins was a friend. He also explained his father had died a month ago, and he was going to visit an uncle in Ohio for two days. Upon questioning, Defendant informed Moore he was unemployed but had worked as a waste oil hauler in the past. While standing there, Trooper Moore noticed very few clothes hanging in the back of the car, a map with highlighted routes lying on the front seat, and a blue Igloo cooler on the front passenger floor board.

Trooper Moore directed Defendant to sit in his patrol car where he issued Defendant a warning for following too closely. He then returned Defendant's license and rental agreement to him. While Defendant remained in the patrol car, Trooper Moore asked him if he was hauling anything illegal in the car. When Defendant replied, "No, there is nothing in there," Trooper Moore asked him if he could search his car. The Defendant said Moore could search the car, but he did not have a trunk key because the rental company had not given him one. Trooper Moore then approached the vehicle and opened the trunk by pressing the trunk release button in the glove box. Inside the trunk, Moore saw a sleeping bag spread over the trunk with a spare tire on top of it. Moore moved the tire and sleeping bag and discovered several plastic bags. The bags contained over eighty pounds of marijuana.

Relying on *United States v. Walker*, 933 F.2d 812 and 941 F.2d 1086 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992), the trial court determined Trooper Moore had violated the

Defendant's Fourth Amendment rights by his continued detention of Defendant. *But see, United States v. Werking*, 915 F.2d 1404 (10th Cir.1990). The trial court stated, "The State has failed to meet its burden under the above-cited statute by a preponderance of the evidence ... in that the questioning by Trooper Moore exceeded the bounds of the traffic stop and the subsequent consent to search was due to the unlawful seizure of the defendant." The trial court then ruled to suppress the evidence. The State pursued an interlocutory appeal under Rule 30.02 and § 547.200, RSMo 1986.

Once a motion to suppress has been filed, the State bears the burden of going forward with the evidence and the risk of nonpersuasion to show by a preponderance of the evidence the motion should be overruled. § 542.296.6, RSMo 1986. Upon review of a motion to suppress, the facts are to be viewed in the light most favorable to the order challenged on appeal. *State v. Blair*, 691 S.W.2d 259, 260[1] (Mo. banc 1985). We review the trial court's decision only to determine if that decision is supported by sufficient evidence. *State v. Burkhardt*, 795 S.W.2d 399, 404[6] (Mo. banc 1990). We may not substitute our discretion for that of the trial court and may not reverse even if we believe we would have weighed the evidence differently. *Id.*

The Fourth Amendment is a guarantee against unreasonable searches and seizures. *United States v. Sharpe*, 470 U.S. 675, 682[1], 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985). For the seizure in this case to be reasonable, and thus fulfill the requirements of the Fourth Amendment, it must fall within the parameters of *Terry v. Ohio* and its progeny. Under *Terry*, a seizure is reasonable if the "officer's action was justified at its inception, and ... it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 19–20[16], 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). In addition, to justify an investigative stop, the seizing officer must be able to point to specific and articulable facts

which when taken together create a reasonable suspicion the person seized is engaged in criminal activity. *Id.* at 21, 88 S.Ct. at 1880.

■ There seems to be no question about the validity of Trooper Moore's initial stop of Defendant for following too closely. The question centers upon whether Trooper Moore had a reasonable basis for the continued detention of Defendant after the conclusion of the traffic stop. During a routine traffic stop, an officer may "request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning." *United States v. Guzman,* 864 F.2d 1512, 1519[8] (10th Cir.1988) (citations omitted). Any detention beyond that required for a normal traffic stop is an unreasonable seizure. *Walker,* 933 F.2d at 816[4]. The Missouri Supreme Court indicates if a traffic stop "extends beyond the time reasonably necessary to effect its initial purpose, the seizure may lose its lawful character" unless reasonable suspicion of another crime arises. *State v. Hyland,* 840 S.W.2d 219 at 221 (Mo.1992).

The State asserts Trooper Moore did have such reasonable suspicion. Trooper Moore testified the following factors led him to have a reasonable suspicion a crime was being committed: (1) a blue Igloo cooler was in the front floor board; (2) a map with highlighted routes lay on the front seat; (3) only a few shirts were hanging in the back of the car even though Defendant stated he was going on a four-day trip; and (4) Defendant was taking a cross-country trip even though he was unemployed. Moore further stated he thought it was unusual Defendant was alone even though the car was rented to another person with Defendant listed as an additional driver. The State points to *United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 1586[5], 104 L.Ed.2d 1 (1989), and argues factors consistent with innocent travel may still provide reasonable suspicion for illegal conduct

when taken together. However, the relevant inquiry is the degree of suspicion attached to those innocent factors. *Id.* 109 S.Ct. at 1587[5]. We find the suppression court could have found the factors cited by the State do not provide a reasonable suspicion of criminal activity even when considered together. The suppression court properly found that Defendant having maps, coolers and a few clothes in the backseat of his car was not indicative of criminal activity.

The State also relies upon *State v. Childress,* 828 S.W.2d 935 (Mo.App.1992). In *Childress,* however, the defendant challenged the length of his detention after the officer had reasonable suspicion another crime was being committed and had detained the defendant. Without further reasonable suspicion another crime is being committed, any continued detention of Defendant is unreasonable. *Walker,* 933 F.2d at 816[5].

■ Even though we conclude the continued detention of Defendant violated his Fourth Amendment rights, there remains the issue of whether Defendant's subsequent consent to search legitimizes it. When consent to search is preceded by a Fourth Amendment violation, that consent is valid only if it is voluntary in fact. *Walker,* 933 F.2d at 817[8]. The consent must be sufficiently an act of free will to purge the primary taint of the illegal detention before it will be admissible. *Id.* We determine voluntariness by looking at the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227[6], 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973). Further, the State bears the burden of showing the consent was given freely and voluntarily. *Id.*

In determining whether consent is voluntary, the Supreme Court listed three facts to be considered: (1) the temporal proximity of the illegal detention and the consent; (2) any intervening circumstances; and (3) the purpose and flagrancy of the officer's conduct. *Brown v. Illinois,* 422 U.S. 590, 603–04[7], 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975); *Walker,* 933 F.2d at 818[10]. The record gives little indication

of the voluntariness of Defendant's consent. Defendant was still in the police car when he consented. Beyond that, there is no evidence indicating coercion or noncoercion. However, the State bears the burden of showing the consent was voluntary. We cannot say the trial court erred in holding the State did not meet its burden.

Judgment affirmed.

AHRENS, P.J., and REINHARD, J., concur.