**STATE of Missouri, Respondent,**

v.

**David MEZA, Jr., Appellant.**

**No. WD 53016.**

Missouri Court of Appeals, Western District.

March 25, 1997.

Thomas J. Cox, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joanne E. Joiner, Asst. Atty. Gen., Jefferson City, for respondent.

SPINDEN, Judge.

David Meza, Jr., appeals his conviction of possessing marijuana with the intention of distributing, delivering, or selling it. He asserts that the circuit court erred in not suppressing the evidence used by the state to convict him because officers violated his constitutional rights in obtaining it. We disagree and affirm the judgment of conviction.

Kansas City police arrested Meza on August 18, 1995, after an officer stopped his car to investigate a traffic violation. Meza's car had spun its tires, "fish-tailed," crossed two lanes abruptly, and ran the officer's patrol car off the road. The officer smelled a marijuana odor when he walked up to Meza's car. The officer administered a sobriety test to Meza, and he passed. When the officer asked Meza about the marijuana odor, Meza said he had nothing to say. The officer continued questioning him, but Meza said nothing. The officer told Meza that he was arresting him for careless driving and took him to police headquarters where the officer prepared a summons and gave it to Meza.

Meanwhile, officers did an inventory search of Meza's car before having it towed. They found a zipped bag in the car's trunk filled with 3.25 pounds of marijuana and $4000 cash.

Meza argues that the circuit court should have suppressed the marijuana because his arrest was "a mere pretext" to give officers a reason to conduct a thorough search of his car under the guise of doing an inventory search. He argues that the traffic stop extended beyond what was necessary to effect the stop's purpose; therefore, it was illegal.

At the suppression hearing, the arresting officer testified:

Q What happened after [your partner checked the interior of Meza's vehicle to make sure there were no weapons]?

A I then asked [Meza] about the odor of marijuana, at which time he said that he had nothing further to say to me.

Q What did you then say to him?

A I then asked him if he was going to cooperate. He didn't make a comment. I asked him if he would sign any tickets that I would issue him. He didn't make a comment. I then stated that I would have to place him under arrest and tow his vehicle if he would not cooperate and sign the tickets, which he made no comment. I then advised him that he was under arrest for careless driving.

Q After you placed him under arrest, then did you order a tow for the vehicle?

A Yes.

Q After you ordered a tow, what did you do next?

A I then inventoried the vehicle.

■■■ "An arrest may not be used as a pretext to search for evidence." *United States v. Lefkowitz,* 285 U.S. 452, 467, 52 S.Ct. 420, 424, 76 L.Ed. 877 (1932). The arresting officer's motives, however, are irrelevant to the circuit court's determination of whether the arrest was pretextual so long as the officer had probable cause to believe that the person arrested committed, or was committing, an offense and the law autho-

rized the officer to effect a custodial arrest for the particular offense. *State v. Mease,* 842 S.W.2d 98, 105–06 (Mo. banc 1992), *cert. denied,* 508 U.S. 918, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993). In other words, so long as an officer is doing no more than he or she is legally permitted and objectively authorized to do, the officer's usual practices do not matter. *Whren v. United States,* —— U.S. ——, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).[1]

■ Meza does not contend that the officer had no basis for making the traffic stop. He argues only that the stop went beyond "what was necessary" for the officer to investigate Meza's careless driving. We disagree. Having probable cause for stopping Meza after observing the careless driving, the officer had a choice: either arrest Meza for his careless driving or issue a summons ordering him to appear in court. Section 544.216, RSMo 1994.[2] It matters not that the Kansas City police officers' custom was to take a driver into custody and to tow his or her car only if the driver was impaired. What mattered was that the officer had the authority to arrest Meza. Moreover, by refusing to cooperate with the officer, Meza thwarted any notions the officer may have had of issuing a summons.

We find no basis for concluding that the officer was obligated to release Meza with a summons. Meza cites *State v. Riddle,* 843 S.W.2d 385, 387 (Mo.App.1992), for the proposition that "[w]hen the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay[.]" Meza misreads *Riddle.*

In that case, the officer had completed his investigation of a traffic violation with the decision to issue a summons. Following the issuance of the summons, the officer then acted on his suspicions to ask for consent to search the driver's car and found drugs in the car's trunk. The *Riddle* court concluded that the officer's suspicions did not give him "a reasonable basis for the continued detention of [the driver] *after the conclusion of the traffic stop.*" *Id.* at 387 (emphasis added).

In this case, the officer had not concluded his traffic stop before deciding to arrest Meza. He concluded the stop with a decision to take Meza into custody. This gave rise to the inventory search of his car. The *Riddle* case has no application here.

In his second point, Meza complains that even if the search can be deemed an inventory search, it exceeded the permissible scope of an inventory search. Meza asserts that the purpose of his arrest was to post bond, so the length of his detention would be "minimal." "Brief detention to post a bond for a traffic offense," he argues, "does not implicate the need [to protect an owner's property while it is in the custody of the police], nor does it justify the opening of a zipped bag in a locked trunk." We disagree.

When Meza stopped his car in response to the officer's direction, it was illegally parked. The officer testified that he decided to have the car towed after arresting Meza because "[i]t was stopped on the highway, illegally parked, and we could not leave it there[.]"

■ The Supreme Court of the United States has said that police may inventory property in their possession when they do so in accordance with standard operating procedures. *Colorado v. Bertine,* 479 U.S. 367, 372, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987). Kansas City's standard police operating procedures required police to inventory a vehicle's contents before having it towed from a crime scene. Moreover, the police procedures required officers to tow the vehicle. Those procedures said:

When the owner/operator refuses to accept one of the following three options:

---

1. The Supreme Court in *Whren* was construing only the Fourth Amendment to the United States Constitution; however, the Supreme Court of Missouri has said, "The Fourth Amendment's protection from unreasonable search and seizure is identical to the protection under Mo. Const. Art. I, § 15." *State v. Jones,* 865 S.W.2d 658, 660 (Mo. banc 1993).

2. This statute says, "Any ... municipal law enforcement officer in this state, [except those not meeting criteria not at issue in this case], may arrest on view, and without a warrant, any person the officer sees violating or who such officer has reasonable grounds to believe has violated any law of this state, including a misdemeanor or infraction, or has violated any ordinance over which such officer has jurisdiction."

a. To drive the vehicle to a police facility after being requested to do so by an officer.

b. To release the vehicle to a qualified driver.

c. To sign an Authorization Not To Tow Vehicle, Form 455 P.D., allowing the arresting officer to leave the vehicle legally parked at the arrest scene.

The first option was not available because the officer took Meza into custody, so he could not drive his car to a police facility. The second option was not available because a qualified driver was not there to accept the police's release of the car. The third option was not acceptable because the car was not legally parked. The procedures also provided that "[a]n arrested owner/operator may be permitted to leave his vehicle *legally parked* at the arrest scene when the ... [v]ehicle will remain legally parked[.]" [3]

Police conducted a lawful inventory search. Even had they had an investigatory motive, it would not have made a difference. "The presence of an investigatory motive, even if proven, does not invalidate an otherwise lawful inventory search." *United States v. Agofsky,* 20 F.3d 866, 873 (8th Cir.), *cert. denied,* 513 U.S. 909, 115 S.Ct. 280, 130 L.Ed.2d 196 (1994).

Meza finally argues that police could have conducted a less intrusive search and accomplished their purposes. A driver made the same argument to this court in *State v. Brown,* 814 S.W.2d 304, 309 (Mo.App.1991). We responded, "[T]he protection of [the driver's] property is not the only purpose of the inventory search. The search is also intended 'to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.' " [4] We deny the point.

For these reasons, we affirm the circuit court's judgment of conviction.

LOWENSTEIN, P.J., and HOWARD, J., concur.