Patricia Breckenridge, judge
The state appeals from the circuit court's order sustaining the defendants' motions to suppress all evidence seized pursuant to a warrant authorizing search of a residence for stolen items. The state admits an officer submitted a prepared search warrant form, which was then executed by a circuit judge, authorizing a search for any deceased human fetus or corpse despite the fact the officer knew no probable cause existed for such provision. The state contends that, regardless of the lack of probable cause, the circuit court should have applied the severance doctrine to redact any invalid portion of the warrant and suppress only the evidence seized pursuant to the invalid portion.
When portions of a search warrant fail to satisfy the Fourth Amendment warrant requirements, the severance doctrine can be applied to redact the invalid portions of the warrant and permit evidence seized pursuant to the valid portions of the warrant to be admitted into evidence. The severance doctrine requires examination of all provisions in the search warrant and *187 determination of the constitutional validity of each provision.
When examined in its entirety, the invalid portions of the search warrant in this case so contaminate the whole warrant that they cannot be redacted pursuant to the severance doctrine. In addition to the corpse clause, another provision of the warrant lacks probable cause in that there are no facts in the search warrant application or affidavit establishing the likelihood that any individuals with outstanding arrest warrants would be found on the premises. Four other provisions of the warrant are so lacking in particularity that they permit search of the residence for evidence of any crime or offense. The complete lack of probable cause and particularity in the invalid portions of the warrant created a general warrant authorizing a broad and invasive search of the residence. The severance doctrine cannot be used to save a general warrant. Accordingly, the circuit court properly applied the exclusionary rule to suppress all evidence seized. The circuit court's order is affirmed.
Factual and Procedural Background[1]
In 2013, M.G. met Jennifer Gaulter and Phillip Douglass at the Argosy Casino, Hotel & Spa. The group went to Mr. Douglass and Ms. Gaulter's hotel room for drinks, but M.G. left after she felt pressured to have sex with the couple. M.G. called her boyfriend, who picked her up and took her back to her apartment.
The next morning, M.G. locked her apartment and went to work. While at work, she received a text message from Ms. Gaulter informing her she had left her handbag with her keys in the hotel room. M.G. agreed that Ms. Gaulter should leave the handbag at the hotel's front desk so M.G. could pick up the handbag after work. She later received another text from Ms. Gaulter inquiring whether she was at home or working. M.G. replied she was still at work and would call Ms. Gaulter after work.
When M.G. returned home around 6:10 p.m., she found her apartment in disarray and several items of property missing. There were no signs of forced entry. She immediately called the hotel to check if her handbag and keys were still there. The hotel staff informed her the handbag was there. At M.G.'s request, the hotel staff looked in the handbag for her keys but did not find them. M.G. sent a text message to Ms. Gaulter about the missing keys and the theft. Ms. Gaulter did not respond. Around 7:30 p.m., M.G. reported the theft to the police. She estimated approximately $10,000 worth of her belongings had been stolen.
When M.G. arrived at the hotel to pick up her handbag, a hotel staff member told her someone had already picked up the bag. Police investigated and found Mr. Douglass and Ms. Gaulter's home address in Blue Springs. M.G. identified the couple from photographs the police found on the Internet.
Subsequent to this investigation, Detective Darold Estes, a 20-year veteran of the Kansas City police department, applied for a search warrant. His affidavit stated that, based on the above facts, there was probable cause to search Mr. Douglass and Ms. Gaulter's residence and to seize specific items believed to have been stolen.
Along with his application and affidavit, Detective Estes submitted a prepared form for the search warrant to be executed by the judge. On the search warrant form, Detective Estes checked a box stating, *188 based on information provided in the affidavit, there was probable cause to search and seize any "[d]eceased human fetus or corpse, or part thereof." The warrant then went on to list several items believed to be stolen from M.G.
The Kansas City police department conducted a search of the residence that evening.[2] No one was home. The police seized a laptop and laptop case, a red purse containing various small items, a Coach purse, and a bracelet. M.G. confirmed all the property seized from the residence had been stolen from her apartment. Mr. Douglass and Ms. Gaulter were arrested and subsequently charged by indictment with burglary in the second degree, section 569.170,[3] and felony stealing, section 570.030, RSMo Supp. 2013.[4]
Mr. Douglass and Ms. Gaulter each filed a motion to suppress asserting the search warrant was invalid because the police did not have probable cause to search for a deceased human fetus or corpse, or part thereof.[5] At a consolidated suppression hearing on the motions, Detective Estes testified he checked the corpse clause because, if a corpse was found during the search, he would be required to obtain a "piggyback warrant"-by checking the box, he was just saving the police from having to stop the search to obtain an additional search warrant if a corpse was found. On cross-examination, Detective Estes admitted there was no probable cause a human corpse would be found during the search.
Following the hearing, the state submitted additional suggestions in opposition to the motions to suppress arguing the good-faith exception to the exclusionary rule applied because the error was caused by the judge's failure to correct the prepared warrant form. The state further contended the good-faith exception applied because the officers conducting the search reasonably relied on the constitutional validity of the warrant and did not expand the search beyond a search for the stolen items.
The circuit court sustained the motions to suppress, finding the good-faith exception to the exclusionary rule did not apply because Detective Estes intentionally checked the corpse clause box and thereby knowingly gave a false statement to the circuit court. The circuit court further concluded the warrant was invalid because it allowed officers to knowingly bypass the particularity requirement by checking boxes to search for items for which no probable cause existed, thereby rendering it, in essence, a general search warrant. The circuit court held the exclusionary rule was appropriate to deter intentional police misconduct and ordered the suppression of all evidence seized. Pursuant to section *189 547.200.1(3),[6] the state appealed the circuit court's order. This Court granted transfer after opinion by the court of appeals. Mo. Const. art. V, sec. 10.
Standard of Review
Any ruling "on a motion to suppress must be supported by substantial evidence." State v. Johnson , 354 S.W.3d 627, 631 (Mo. banc 2011). This Court reviews the facts and reasonable inferences therefrom favorably to the circuit court's ruling and disregards contrary evidence and inferences. Id. at 631-32. Whether a search is "permissible and whether the exclusionary rule applies to the evidence seized" are questions of law reviewed de novo. Id. at 632. This Court is "primarily concerned with the correctness of the trial court's result, not the route the trial court took to reach that result, and the trial court's judgment must be affirmed if cognizable under any theory, regardless of whether the trial court's reasoning is wrong or insufficient." State ex rel. Greitens v. Am. Tobacco Co. , 509 S.W.3d 726, 736 (Mo. banc 2017) (internal quotation omitted).
The Severance Doctrine
The Fourth Amendment of the United States Constitution ensures against "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Article I, section 15 of the Missouri Constitution provides coextensive protection against unreasonable searches and seizures. See Johnson , 354 S.W.3d at 630.
Missouri's General Assembly recognized these constitutional protections and enacted a statute providing a search warrant is invalid "[i]f it was issued without probable cause." Section 542.276.10(3), RSMo Supp. 2013. Likewise, a search warrant is invalid "[i]f it does not describe the person, place, or thing to be searched or the property, article, material, substance, or person to be seized with sufficient certainty." Section 542.276.10(5), RSMo Supp. 2013.
The circuit court concluded the warrant was invalid and suppressed all evidence seized because the warrant lacked probable cause and particularity in that Detective Estes intentionally checked the corpse clause of the search warrant form he prepared for the judge even though he knew the facts in his affidavit did not establish probable cause that a corpse or deceased fetus would be found. The state concedes there was no probable cause to search for and seize a deceased fetus, corpse, or part thereof. Nevertheless, it asserts the circuit court erred by suppressing all evidence seized because the invalid portion of the warrant-the corpse clause-could be redacted pursuant to the "severance doctrine" and all items were seized under the valid portions of the warrant.
Generally, "all evidence obtained by searches and seizures in violation of the Constitution is ... inadmissible in state court." State v. Grayson , 336 S.W.3d 138, 146 (Mo. banc 2011) (alteration in original) (internal quotation omitted). Suppression, therefore, is the ordinary remedy for searches conducted in violation of the Fourth Amendment. Id. at 146-47 ; United States v. Sells , 463 F.3d 1148, 1154 (10th Cir. 2006). To avoid the harsh realities of suppressing evidence under the exclusionary rule, however, most federal and state *190 courts have adopted the "severance doctrine."[7] See United States v. Riggs , 690 F.2d 298, 300-01 (1st Cir. 1982) ; see also Sells , 463 F.3d at 1155 (noting that "every federal court to consider the issue has adopted the doctrine of severance").
Under the severance doctrine, any invalid portions of a search warrant are "redacted" or "severed" from the valid portions so long as the invalid portions can be meaningfully severed from the valid portions and have not created an impermissible general warrant. United States v. Christine , 687 F.2d 749, 754 (3d Cir. 1982). Evidence seized pursuant to the valid portions of the search warrant may then be admissible at trial. Id.
But the severance doctrine is not appropriate in every case.[8] Sells , 463 F.3d at 1155. Severance is appropriate under the doctrine only "if the valid portions of the warrant [are] sufficiently particularized, distinguishable from the invalid portions, and make up the greater part of the warrant." Id. (alteration in original) (internal quotation omitted). In Sells , the Tenth Circuit established a five-step test for determining whether to sever invalid portions of a search warrant that has since been followed by the majority of jurisdictions. Id. at 1151. Applying this five-step test, it becomes apparent that severance is not appropriate under the fact and circumstances of this case.
In applying the severance doctrine, the warrant must be considered in its entirety and the constitutional validity of each portion determined. Id. The search warrant, in its entirety, provided:
Based on information provided in a verified application/affidavit, the Court finds probable cause to warrant a search for and/or seizure of the following:
• Property, article, material or substance that constitutes evidence of the commission of a crime;
• Property that has been stolen or acquired in any manner declared an offense;
• Property for which possession is an offense under the laws of this state;
• Any person for whom a valid felony arrest warrant is outstanding;
• Deceased human fetus or corpse, or part thereof;
• Other (Specify-See Missouri Revised Statute Section 542.271 )[.]
Of the six categories listed, Detective Estes checked the first five boxes.
The warrant also described the "person, place or thing to be searched" as Mr. *191 Douglass and Ms. Gaulter's street address and described the physical appearance of the residence. The warrant then stated:
The property, article, material, substance or person to be searched for and seized is described as follows:
Coach purse that is silver with C's on it, a Coach purse with purple beading, Prada purse black in color, large Louis Vuitton bag
Toshiba Satellite laptop limited edition silver with black swirls on it Vintage/costume jewelry several items had MG engraved on them Coach, Lv, Hermes, Bestie Sunglasses
Passport and Social Security card ( [M.G.] )
Social Security Card/Birth Certificate in son's name ( [N.L.] )
Various bottles of perfume make up brushes and Clinique and Mary Kay make up sets
Keys not belonging to property or vehicle at scene
Any property readily and easily identifiable as stolen
Step One: Divide the Warrant into Categories of Items
The first step of the Sells test requires the warrant be divided into "individual phrases, clauses, paragraphs, or categories of items" in a "commonsense and realistic fashion, rather than a hypertechnical manner." Id. at 1155-56 (internal quotation omitted). "[T]he proper division of any particular warrant must be determined on a case-by-case basis." Id. at 1156.
Here, the warrant should be divided into 13 categories:
(1) property, article, material or substance that constitutes evidence of the commission of a crime;
(2) property that has been stolen or acquired in any manner declared an offense;
(3) property for which possession is an offense under the laws of this state;
(4) any person for whom a valid felony arrest warrant is outstanding;
(5) deceased human fetus or corpse, or part thereof;
(6) Coach, Prada, and Louis Vuitton bags;
(7) Toshiba laptop;
(8) vintage/costume jewelry, some with MG engraved;
(9) Coach, Lv, Hermes, Bestie sunglasses;
(10) passport, social security cards, and birth certificates for M.G. and her son;
(11) perfume and makeup sets;
(12) keys not belonging to property or vehicles at the scene; and
(13) any property readily and easily identifiable as stolen.[9]
Step Two: Evaluate the Constitutional Validity of Each Category
Once the warrant is divided, the reviewing court "evaluate[s] the constitutionality of each individual part to determine whether some portion of the warrant satisfies the probable cause and particularity requirements of the Fourth Amendment." Id. at 1151. Mr. Douglass' and Ms. Gaulter's motions to suppress did not challenge the probable cause or particularity aspects of categories 1 through 4. But it is irrelevant whether Mr. Douglass and Ms. Gaulter expressly contested the constitutional *192 validity of such categories. The state is requesting application of the severance doctrine. And application of the severance doctrine requires this Court to examine the search warrant in its entirety . At the state's request , the constitutional validity of each portion of the warrant must be examined by this Court.
The first three categories of the warrant expressly permitted the search for and seizure of: (1) "[p]roperty, article, material or substance that constitutes evidence of the commission of a crime"; (2) "[p]roperty that has been stolen or acquired in any manner declared an offense"; and (3) "[p]roperty for which possession is an offense under the laws of this state." (Emphasis added). Such language essentially mirrors subdivisions (1), (2) and (4) of section 542.271.1,[10] which enumerates the broad, generic categories for which a search warrant may be issued. Such categories place no limitations on the search and are devoid of any reference to the crimes related to M.G. No specificity as to the crime or property is provided in these first three categories.
"[T]he fourth amendment requires that the government describe the items to be seized with as much specificity as the government's knowledge and circumstances allow, and warrants are conclusively invalidated by their substantial failure to specify as nearly as possible the distinguishing characteristics of the goods to be seized." Sells , 463 F.3d at 1154 (internal quotation omitted). The particularity "requirement is met if the warrant's description enables the searcher to reasonably ascertain and identify the items to be seized." State v. Tolen , 304 S.W.3d 229, 232 (Mo. App. 2009). The broad, general statutory language of the first three categories does not include any distinguishing characteristics of the goods to be seized or provide any guidance to law enforcement as to the identity of the items to be seized. The first three categories, therefore, lack any particularity for purposes of the Fourth Amendment.
The state suggests categories 1 through 3 described M.G.'s stolen property in general terms and then that property was more specifically described in categories 6 through 13. But the warrant authorizes a search for and seizure of property broadly described in categories 1 through 3 that is not limited by referencing any particular criminal offense and certainly not limited by reference to M.G. or her stolen property.
In Sells , the Tenth Circuit found a category of a warrant providing for "any other related fruits, instrumentalities and evidence *193 of the crime" was sufficiently particular. 463 F.3d at 1157 (emphasis added). The Tenth Circuit acknowledged the category "ha[d] some characteristics of both a valid warrant provision and one that is too broad." Id. Nevertheless, the Tenth Circuit reasoned that, despite the catch-all nature of the provision referring only to "the crime," the category was valid because "the entire clause is limited by the word 'related,' which refers back to the previously enumerated provisions of the warrant." Id. Therefore, because the category expressly stated it related back to the previous provisions, the Tenth Circuit concluded the category was sufficiently particular to constitute a valid portion of the warrant. Id. at 1157-58.
Unlike the category in Sells , categories 1 through 3 do not include any language that would relate them to the sufficiently particular portions of the warrant listing M.G.'s stolen property items, nor is there anything in the first three categories that limits the search to items related to the alleged theft of M.G.'s property by Mr. Douglass and Ms. Gaulter. By failing to relate these categories to the theft of M.G.'s property, the warrant permitted officers to search for any property, article, material, or substance that might constitute evidence of any crime or offense. Such categories are overly broad and, therefore, lack the particularity required under the Fourth Amendment.
The next category provides for the seizure of "[a]ny person for whom a valid felony arrest warrant is outstanding." But a review of the warrant application and supporting affidavit establishes no probable cause exists for this provision. Probable cause exists if, "given all the circumstances set forth in the affidavit[,] ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." State v. Neher , 213 S.W.3d 44, 49 (Mo. banc 2007) (internal quotation omitted). In reviewing "whether probable cause exists, the appellate court may not look beyond the four corners of the warrant application and the supporting affidavits." Id.
There are no facts in the warrant application and supporting affidavit to establish probable cause that any individual with an outstanding felony arrest warrant would be found at Mr. Douglass and Ms. Gaulter's residence. Without such facts, the application and affidavit do not establish a fair probability that any individual with an outstanding felony warrant would be found on the premises. Category 4, therefore, is invalid because it is not supported by probable cause.[11]
Likewise, category 5, the corpse clause, lacks probable cause. There are no facts in the search warrant application or supporting affidavit establishing a fair probability that a deceased human fetus, *194 corpse, or part thereof would be found in the residence. Category 5, therefore, is also invalid for lack of probable cause.
In contrast, categories 6 through 12 list specific items believed to have been stolen from M.G.'s apartment. Given the facts and circumstances stated in the affidavit accompanying the warrant, there was a fair probability such items would be found at Mr. Douglass and Ms. Gaulter's residence. Additionally, the warrant provides distinguishing characteristics for each item. It follows that those categories satisfy the probable cause and particularity requirements for Fourth Amendment purposes.
Finally, category 13 permits the search for and seizure of "any property readily and easily identifiable as stolen." While there was probable cause to believe property stolen from M.G. would be found at Mr. Douglass and Ms. Gaulter's residence, broad, catch-all provisions like category 13 fail to meet the Fourth Amendment's particularity requirement. As explained in United States v. LeBron , 729 F.2d 533 (8th Cir. 1984), such a provision gives officers a general search authorization by failing to limit the search in any fashion to the crime at issue.
In LeBron , the Eighth Circuit concluded language authorizing a search of a residence for "other property, description unknown, for which there exists probable cause to believe it to be stolen" lacked the particularity required under the Fourth Amendment. Id. at 536-37. The Eighth Circuit acknowledged, "when it is impossible to describe the fruits of a crime, approval has been given to a description of a generic class of items." Id. at 536. Nevertheless, the Eighth Circuit reasoned the portion of the warrant allowing for the search of property believed to be stolen "is not descriptive at all" but rather "is simply conclusory language" that provides no guidelines to the officers executing the search warrant. Id. at 537. It further concluded such direction was a "general authorization" that "provide[d] no protection against subjecting a person's lawfully held property to a general search and seizure." Id.
Similarly, category 13 provides no guidelines for the officers as to what items might be easily or readily identifiable as stolen. Instead, it is merely conclusory language that lacks any specificity and is not limited to offenses related to M.G.'s property. Even under the Tenth Circuit's more liberal holding in Sells , there is nothing in category 13 that limits the catch-all nature of the category by relating it "back to the previously enumerated provisions of the warrant." 463 F.3d at 1157. Category 13, therefore, is also invalid for failing to satisfy the particularity requirement.
Step Three: Distinguish the Valid and Invalid Categories
The third step of the Sells test requires determination of whether the valid portions of the warrant are distinguishable from the invalid portions. Id. at 1158. If "each of the categories of items to be seized describes distinct subject matter in language not linked to language of other categories, and each valid category retains its significance when isolated from [the] rest of the warrant, then the valid portions may be severed from the warrant." Id.
The valid portions of the warrant-categories 6 through 12-are not linked to the language in other categories and retain their significance when isolated from the rest of the warrant. The valid portions of the warrant, therefore, are distinguishable from the invalid portions.
Step Four: Determine Whether the Valid or Invalid Portions Make up the Greater Part of the Warrant
Under the fourth step, it must be determined whether the valid portions *195 make up the greater part of the warrant. Id. "Total suppression may still be required even where a part of the warrant is valid (and distinguishable) if the invalid portions so predominate the warrant that the warrant in essence authorizes a general exploratory rummaging in a person's belongings." Id. (internal quotation omitted). If the invalid portions predominate such as to create a general warrant, "application of the severance doctrine would defeat rather than effectuate the protections of the Fourth Amendment and the purpose of the exclusionary rule." Id.
In determining whether the valid portions make up the greater part of the warrant, courts consider "the number of valid versus invalid provisions." Id. at 1159. But a mere counting of the provisions is insufficient; rather, courts must also consider "the practical effect of those parts." Id. at 1160. Though there may be numerically fewer invalid portions of the warrant, those invalid portions "may be so broad and invasive that they contaminate the whole warrant." Id. Courts, therefore, must "employ a holistic test that examines the qualitative as well as the quantitative aspects of the valid portions of the warrant relative to the invalid portions to determine whether the valid portions make up the greater part of the warrant." Id. at 1160 (internal quotation omitted).
Here, the valid portions of the warrant-categories 6 through 12-are numerically greater than the invalid portions-categories 1 through 5 and 13. But consideration of the practical effect of the invalid portions of the warrant reveals them to be so broad and invasive that they contaminate the whole warrant.
The lack of probable cause and particularity in the invalid portions of the warrant turned it into the very thing the particularity requirement was created to prevent-a general warrant. Coolidge v. New Hampshire , 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). A general warrant permits "a general, exploratory rummaging in a person's belongings." Id. By mirroring the language of section 542.271 -the statute enumerating the broad, general categories for which a search warrant can issue without any limitations-categories 1 through 5 effectively gave officers unfettered discretion to search the entire residence and seize any property they believed constituted evidence of the commission of any crime. The warrant, therefore, authorized a broad and invasive search of Mr. Douglass and Ms. Gaulter's residence despite the specificity of the items contained in the valid portions of the warrant.
In sum, it is not just the corpse clause that invalidates this warrant. Rather, it is the multiple invalid portions of the warrant-specifically categories 1 through 5 and 13-that so contaminate the warrant as to render it a general warrant. The severance doctrine cannot be used to save a general warrant and is, therefore, inappropriate in this case. Sells , 463 F.3d at 1158.
The state suggests no harm resulted from the broad parameters of the search warrant because the items contained in the valid portions, such as keys and identification, allowed for an extensive search of Mr. Douglass and Ms. Gaulter's residence and the items seized were those for which probable cause existed. But such argument has no relevance under the severance doctrine. Rather, it is just the opposite. The severance doctrine-which, again, the state requested be applied-rejects any notion that the extent of the actual search or the number of items seized somehow remedies otherwise invalid portions of a warrant. Id. at 1159. The severance doctrine focuses exclusively on the *196 search warrant itself, not what items were actually seized pursuant to it. Id. Therefore, the fact that the only items seized were those stolen from M.G. has no bearing on whether severance is appropriate in this case.
The dissenting opinion, likewise, reasons Fourth Amendment jurisprudence would authorize the suppression of only evidence that was actually seized in reliance on the corpse clause. It concludes checking the corpse clause created merely the potential for a Fourth Amendment violation and the Supreme Court has "never held that potential, as opposed to actual, invasions of privacy constitute searches for purposes of the Fourth Amendment." United States v. Karo , 468 U.S. 705, 712, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984).[12] But there is no question that an invasion of privacy occurred in this case because there was, in fact, a search of Mr. Douglass and Ms. Gaulter's residence. And although that search was made pursuant to a warrant, by the state's own admission, that warrant violated the Fourth Amendment because at least one provision was not supported by probable cause. It follows that the question in this case is not whether a Fourth Amendment violation occurred-it did. Rather, the issue is what is the appropriate remedy for that Fourth Amendment violation.
The dissenting opinion reasons total suppression is inappropriate because the corpse clause was the only invalid portion of the warrant and could be redacted pursuant to the severance doctrine. In reaching its conclusion, the dissenting opinion divides the warrant into five categories, one of which is the corpse clause, and reasons the other four checked categories do not violate the particularity requirement because the warrant form tracked the language in section 542.271 and the sentence preceding the categories expressly referenced the application for the search warrant.
First, the sentence in the search warrant preceding the list of broad, generic categories states: "Based on information provided in a verified application/affidavit." That statement merely notes the judge has considered the information in the application/affidavit. It does not incorporate the application/affidavit or say it is attached.
Next, the language of the broad, generic categories does not merely "track" the language in section 542.271 ; it essentially repeats it verbatim. Such categories can hardly be said to be sufficiently particularized to the search and seizure at hand when they simply mirror the language of a statute intended to enumerate the broad, generic categories for which a search warrant may be issued. While the dissenting opinion states invalidating these categories would call into question the constitutional validity of section 542.271, it does nothing of the sort. It is merely a recognition that, under the facts and circumstances of this case, such broad, generic categories without *197 specification as to the crime or items to be seized do not satisfy the particularity requirement.
Furthermore, to the extent the dissenting opinion relies on the search warrant application to cure the lack of the particularity, it overlooks an important detail. As the Supreme Court explains, most courts have held a warrant may be construed "with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting documentation accompanies the warrant." Groh v. Ramirez , 540 U.S. 551, 557-58, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (emphasis added). The requirement that the application or affidavit accompany the warrant is not a perfunctory. "The presence of a search warrant serves a high function, and that high function is not necessarily vindicated when some other document, somewhere, says something about the objects of the search, but the contents of that document are neither known to the person whose home is being searched nor available for her inspection." Id. at 557, 124 S.Ct. 1284 (internal citation omitted). Requiring a warrant to describe items with particularity "also assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." Id. at 561, 124 S.Ct. 1284 (internal quotation omitted).
Additionally, there is no evidence in the record that the application was attached to or otherwise accompanied the search warrant when the search warrant was served. It follows the search warrant application cannot cure the warrant's particularity deficiencies in this case.[13]
The dissenting opinion further attempts to validate the first five broad, generic categories by reasoning accompaniment of the search warrant application is irrelevant because the most important thing for purposes of the particularity analysis is that *198 the search warrant included the same list of detailed items included in the search warrant application.[14] Again, this Court does not take issue with the particularity of the detailed items listed in categories 6 through 12. But those categories do not cure the lack of particularity in the first five categories and category 13. Accordingly, severance is not appropriate in this case.[15]
The Exclusionary Rule Was Appropriately Applied
In its second point, the state asserts the circuit court erred in suppressing all evidence seized because application of the exclusionary rule was unwarranted in that Detective Estes' purported misconduct in checking a box on the warrant was not the type of serious misconduct that should be deterred by the exclusion of otherwise lawfully seized evidence. Because this Court finds the search warrant to be a general warrant that violates the Fourth Amendment, it is not necessary for this Court to consider the legal effect or impact of Detective Estes' misconduct.
Again, generally "all evidence obtained by searches and seizures in violation of the Constitution ... is inadmissible in state court." Grayson , 336 S.W.3d at 146 (alteration in the original) (internal quotation omitted). And "the only remedy for a general warrant is to suppress all evidence obtained thereby." United States v. Yusuf , 461 F.3d 374, 393 n.19 (3d Cir. 2006). Accordingly, *199 the circuit court did not err in applying the exclusionary rule.
Conclusion
The circuit court did not err in refusing to apply the severance doctrine. The invalid portions of the warrant predominate the valid portions such that they contaminated the whole warrant and turned it into a general warrant. The severance doctrine cannot be used to save a general warrant. The circuit court, therefore, properly suppressed all evidence seized. The circuit court's order is affirmed.
Draper, Russell and Stith, JJ., concur;
Fischer, C.J., dissents in separate opinion filed;
Wilson, J., concurs in opinion of Fischer, C.J. Powell, J., not participating.

The facts are taken from the search warrant affidavit and application and the probable cause statement attached to the arrest warrant.

Blue Springs police conducted a knock and announce on Mr. Douglass and Ms. Gaulter's residence. Blue Springs police then secured the residence before releasing it to the Kansas City police department.

Unless otherwise noted, all statutory citations are to RSMo 2000.

In light of this Court's decision in State v. Bazell , 497 S.W.3d 263, 266-67 (Mo. banc 2016), the felony stealing offenses charged against Mr. Douglass and Ms. Gaulter would be misdemeanor offenses.

In their motions to suppress, Mr. Douglass and Ms. Gaulter also asserted the search warrant was invalid because the police failed to leave a return receipt for the search warrant at the residence as ordered by the circuit court. They withdrew this claim prior to the suppression hearing after the state submitted the return receipt for the search. They further asserted the warrant was improperly executed because the Kansas City police department did not have statutory authority to execute a warrant for a residence located in Blue Springs. Such issue, however, need not be addressed given the Court's disposition of the appeal.

Section 547.200.1(3) provides: "An appeal may be taken by the state through the prosecuting or circuit attorney from any order or judgment the substantive effect of which results in ... [s]uppressing evidence[.]"

Various courts have also interchangeably referred to this doctrine as the "severability doctrine" and the "redaction doctrine."

Mr. Douglass and Ms. Gaulter assert the severance doctrine cannot be applied in this case because Detective Estes acted in bad faith by intentionally checking the corpse clause despite knowing no probable cause existed for this provision. Although no court has so expressly held, several courts have suggested the severance doctrine is not applicable when an officer acts in bad faith in obtaining a search warrant. See United States v. Pitts , 173 F.3d 677, 681 n.5 (8th Cir. 1999) ; United States v. Fitzgerald , 724 F.2d 633, 637 (8th Cir. 1983) ; United States v. Freeman , 685 F.2d 942, 952 (5th Cir. 1982). Other courts have warned the severance doctrine should not be applied if the "overall tenor of the warrant or search smacks of ... an abuse of the prospective availability of redaction," Christine , 687 F.2d at 759, or if officers "flagrant[ly] disregard the terms or grossly exceed the scope of the search warrant." Sells , 463 F.3d at 1162 (alteration in original) (internal quotation omitted). But this Court need not decide whether Detective Estes' misconduct prohibits application of the severance doctrine because, as explained herein, the severance doctrine cannot be used to cure the warrant's deficiencies in this case.

The dissenting opinion divides the warrant into only five categories-those set out as 1 through 5 above.

Section 542.271 provides:
1. A warrant may be issued to search for and seize, or photograph, copy or record any of the following:
(1) Property, article, material, or substance that constitutes evidence of the commission of a criminal offense; or
(2) Property which has been stolen or acquired in any other manner declared an offense by chapters 569 and 570; or
(3) Property owned by any person furnishing public communications services to the general public subject to the regulations of the public service commission if such person has failed to remove the property within a reasonable time after receipt of a written notice from a peace officer stating that such property is being used as an instrumentality in the commission of an offense; or
(4) Property for which possession is an offense under the law of this state; or
(5) Property for which seizure is authorized or directed by any statute of this state; or
(6) Property which has been used by the owner or used with his acquiescence or consent as a raw material or as an instrument to manufacture or produce any thing for which possession is an offense under the laws of this state.

The dissenting opinion suggests this Court should pay deference to the fact that, at the suppression hearing, counsel arguing on behalf of Mr. Douglass and Ms. Gaulter "conceded" probable cause existed for the outstanding arrest warrant provision. First, counsel actually stated: "I can understand that there may have been probable cause to believe that either of the listed subjects may have had warrants outstanding for them." (Emphasis added). Second, whether probable cause exists is a question of law that is reviewed de novo and cannot be conceded by a party. State v. Hosier , 454 S.W.3d 883, 891 (Mo. banc 2015). Again, in determining "whether probable cause exists, the appellate court may not look beyond the four corners of the warrant application and the supporting affidavits." Neher , 213 S.W.3d at 49. Looking strictly at the warrant application and supporting affidavit, there is nothing that supports a finding of a fair probability that any individual with an outstanding felony arrest warrant would be found at Mr. Douglass and Ms. Gaulter's residence.

The statement in Karo that the Supreme Court has "never held that the potential, as opposed to actual, invasions of privacy constitute searches for purposes of the Fourth Amendment" cannot be read as a holding that the search of an individual's residence with a general search warrant is only a potential invasion of privacy. 468 U.S. at 712, 104 S.Ct. 3296. The context of the statement in Karo was that there was only a potential invasion of the defendant's privacy by the transfer to the defendant of a can containing an unmonitored beeper. Id. at 712-13, 104 S.Ct. 3296. The Supreme Court found such installation and transfer of the beeper did not constitute a search in violation of the Fourth Amendment. Id. at 713, 104 S.Ct. 3296. The Supreme Court went on to hold, however, that the monitoring of the beeper by law enforcement officials without a search warrant, when the beeper was inside the defendant's residence, violated the defendant's Fourth Amendment rights. Id. at 714-18, 104 S.Ct. 3296.

The dissenting opinion contends this Court's recognition that most courts have required the affidavit or application to accompany the search warrant to cure a warrant's lack of particularity is inconsistent with Supreme Court precedent. In doing so, the dissenting opinion points out that the Supreme Court in Groh did not expressly adopt a rule requiring incorporation and accompaniment of the affidavit or search warrant application; instead, the Supreme Court stated it "need not further explore the matter of incorporation" because "the warrant did not incorporate other documents by reference, nor did either the affidavit or the application ... accompany the warrant." 540 U.S. at 558, 124 S.Ct. 1284. The fact the Supreme Court did not definitively decide the issue in Groh , however, does not negate that the majority of jurisdictions addressing the issue of incorporation require the accompaniment of the affidavit or application before the affidavit or application can overcome the warrant's particularity deficiencies. But see United States v. Hurwitz , 459 F.3d 463, 471 (4th Cir. 2006) ; Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco & Firearms , 452 F.3d 433, 439 (6th Cir. 2006). Moreover, Groh is not inconsistent with the incorporation/accompanying approach. In fact, in rejecting the state's argument that no Fourth Amendment violation occurred because the scope of the search did not exceed the limits set forth in the application, the Supreme Court stated:
But unless the particular items described in the affidavit are also set forth in the warrant itself (or at least incorporated by reference, and the affidavit present at the search) , there can be no written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit.
Groh , 540 U.S. at 560, 124 S.Ct. 1284 (emphasis added). Even one of the sources relied on by the dissenting opinion goes as far as to say "it is clear that the [Supreme] Court in Groh has accepted and adopted the incorporation/accompanying approach, without specifically saying so, as the discussion of whether there was a valid with-warrant search is abruptly ended because there was neither incorporation nor accompaniment." 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.6(a) (5th ed. 2012).

In reasoning the accompaniment of the warrant application is of no consequence and the particularity analysis turns on the inclusion in the search warrant of the particularized items from the application, the dissenting opinion takes language from several opinions out of context. First, the dissenting opinion quotes Groh for the proposition that the particularity requirement of the Fourth Amendment may be satisfied regardless of whether the warrant application is attached to the search warrant if "the particular items described in the affidavit are also set forth in the warrant itself[.]" 540 U.S. at 560, 124 S.Ct. 1284. But such statement was made in the context of explaining "unless the particular items described in the affidavit are also set forth in the warrant itself (or at least incorporated by reference, and the affidavit present at the search) ," then there is no way to ensure the magistrate found probable cause for every item in the affidavit. Id. (emphasis added). The statement in Groh , therefore, simply sets forth the general principle that the items to be seized must be set forward in the warrant with particularity or at least by incorporation and accompaniment of the affidavit or application. The dissenting opinion further relies on Bartholomew v. Pennsylvania , 221 F.3d 425, 429-30 (3d Cir. 2000), for the proposition that there is no Fourth Amendment violation when "the list of items to be seized ... appear[s] on the face of the warrant." But Bartholomew addressed whether a sealed affidavit must accompany the search warrant to cure the warrant's particularity deficiencies, and the Third Circuit held "where the list of items to be seized does not appear on the face of the warrant, sealing that list, even though it is 'incorporated' in the warrant, would violate the Fourth Amendment. " Id. at 430 (emphasis added). Bartholomew , therefore, is consistent with the requirement that the affidavit or application accompany the search warrant before incorporation can cure any particularity deficiencies in the warrant. Finally, the dissenting opinion quotes extensively from United States v. Hamilton , 591 F.3d 1017, 1027-28 (8th Cir. 2010). But much like Groh , the Hamilton court never reached the incorporation/accompanying issue because it concluded "even if the warrant failed to meet the particularity requirement of the Warrant Clause," the exclusionary rule should not be applied under the good-faith exception. Id. at 1027. Accordingly, the cases relied on by the dissenting opinion do not support the conclusion that it is of no consequence to a particularity analysis whether the search warrant application accompanied the search warrant.

Because the invalid portions of the search warrant predominate, it is unnecessary to reach the fifth step of the Sells test-severing the valid portions from the invalid portions and suppressing evidence accordingly. 463 F.3d at 1161.