

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD83177** |
| **v.** | ) | |
| | ) | |
| | ) | **OPINION FILED:** |
| | ) | **July 7, 2020** |
| **JESSE B. ALFORD,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Circuit Court of Randolph County, Missouri**
**The Honorable Mason R. Gebhardt, Judge**

**Before Division Two:** Mark D. Pfeiffer, Presiding Judge, and
Alok Ahuja and Gary D. Witt, Judges

The State of Missouri (the "State") brings this interlocutory appeal, challenging the ruling of the Circuit Court of Randolph County, Missouri ("trial court"), in favor of Mr. Jesse Alford's ("Alford") motion to suppress evidence relating to a traffic stop and subsequent driving while intoxicated investigation. We affirm.

## Factual and Procedural Background[1]

On May 27, 2018, Master Sergeant Nicholas Berry of the Missouri State Highway Patrol was on duty during the early morning hours. In Sergeant Berry's probable cause statement, his

---

[1] Upon review of a trial court's suppression ruling, we defer to the factual findings and credibility determinations made by the trial court and we view the evidence and all reasonable inferences therefrom in the light most favorable to the ruling of the trial court. *State v. Lammers*, 479 S.W.3d 624, 630 (Mo. banc 2016).

report noted that at approximately 2:12 a.m., he noticed Alford's vehicle parked in the entrance to the parking lot of Felicia's Restaurant on the west side of Highway JJ. Sergeant Berry's probable cause statement did not indicate that he had observed any traffic violation to support his *Terry* stop[2] and Sergeant Berry did not ticket Alford for a traffic violation regarding the location of his vehicle. Instead, Sergeant Berry indicated in his probable cause statement: "Concerned the driver may be might be [sic] experiencing mechanical difficulties, having an unknown emergency or needing assistance (community caretaker function), I approached the Alford [vehicle]."

Both in his deposition testimony and at trial, Sergeant Berry confirmed that he did not observe any mechanical difficulty with the Alford vehicle; he did not observe any malfunctioning equipment; he did not observe any flat tires; he did not observe any engine trouble and, in fact, confirmed that the engine was running at all relevant times; and, he did not observe any other evidence that the motorist in the Alford vehicle was in any distress.

But, for the first time, at trial and in response to leading questions from the prosecuting attorney, Sergeant Berry stated that the Alford vehicle was not just "in the entrance to Felicia's Restaurant," but was actually "blocking the entrance" and was unlawfully parked in a state right-of-way in violation of section 300.440.1(2).[3] The trial court expressly found this belated assertion by Sergeant Berry to be "without merit" and "not credible."

Following making initial contact with Alford, Sergeant Berry investigated and subsequently arrested Alford for driving while intoxicated. Alford was then charged with driving while intoxicated and subsequently filed a motion to suppress all evidence arising from the initial *Terry* stop on the grounds that it was not justified by reasonable suspicion of criminal activity or by Sergeant Berry's role as a community caretaker.

---

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[3] All statutory references are to the REVISED STATUTES OF MISSOURI 2016, as supplemented through 2018.

Following a hearing on July 17, 2019, the trial court sustained Alford's motion to suppress, expressly concluding that "the State has offered no evidence concerning what specific law or ordinance Defendant was violating," the State's argument that any traffic violation existed at the time of Sergeant Berry's *Terry* stop was "undermined by the fact that Defendant was not issued a ticket," Sergeant Berry's trial testimony was "not credible" as it conflicted with "his probable cause statement [and] his deposition," and finally, "there were no facts from which one could reasonably infer that Defendant was in need of assistance."

The State timely filed this interlocutory appeal.[4]

**Standard of Review**

"At a motion to suppress hearing, the State bears the burden of proving that the seizure was constitutionally proper." *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005).

> A trial court's ruling on a motion to suppress will be reversed on appeal only if it is clearly erroneous. This Court defers to the trial court's factual findings and credibility determinations, and considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling. Whether conduct violates the Fourth Amendment is an issue of law that this Court reviews *de novo*.

*State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007) (citations omitted).

As such, reversal is only warranted if, "after review of the entire record, this Court is left with the definite and firm impression that a mistake has been made." *State v. Lammers*, 479 S.W.3d 624, 630 (Mo. banc 2016). "This Court is primarily concerned with the correctness of the trial court's result, not the route the trial court took to reach that result, and the trial court's judgment must be affirmed if cognizable under any theory, regardless of whether the trial court's

---

[4] *See* section 547.200.1(3); *State v. Burns*, 339 S.W.3d 570, 571-72 (Mo. App. W.D. 2011) (observing that the State is entitled to interlocutory appeal of a trial court's suppression ruling suppressing evidence in a criminal case).

reasoning is wrong or insufficient." *State v. Douglass*, 544 S.W.3d 182, 189 (Mo. banc 2018) (internal quotation marks omitted).

**Analysis**

The Fourth Amendment of the United States Constitution protects individuals' right to be free from "unreasonable searches and seizures." U.S. CONST. amend. IV. "Enforced pursuant to the exclusionary rule, the protections of the Fourth Amendment have been extended via the Fourteenth Amendment to defendants in state court prosecutions." *State v. Goucher*, 580 S.W.3d 625, 633 (Mo. App. W.D. 2019) (internal quotation marks omitted). "A temporary, noncustodial traffic stop constitutes an 'unreasonable' 'seizure' under the Fourth Amendment unless the stop is supported by reasonable suspicion or probable cause." *State v. Smith*, 595 S.W.3d 143, 145 (Mo. banc 2020) (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 879, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Davis v. Mississippi*, 394 U.S. 721, 726-27, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969)). "The burden falls on the State to justify [the] warrantless search or seizure." *State v. Stoebe*, 406 S.W.3d 509, 514 (Mo. App. W.D. 2013).

> In determining whether the seizure and search were unreasonable, the court must determine whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. Constitutionally sound probable cause is not dependent upon the subjective intentions of the officer. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.

*Goucher*, 580 S.W.3d at 633-34 (citations omitted) (internal quotation marks omitted).

**I.**

In its first point, the State asserts the trial court erred in granting Alford's motion to suppress because Sergeant Berry was justified in contacting Alford because Alford's vehicle was in violation of section 300.440.1(2), which makes it illegal to "[s]tand or park a vehicle, whether occupied or not, except momentarily to pick up or discharge a passenger or passengers: (a) In

4

front of a public or private driveway"; other than "when necessary to avoid conflict with other traffic, or in compliance with law or the directions of a police officer or official traffic control device[.]"

During an investigative detention by a law enforcement officer, commonly referred to as a *Terry* stop, "police officers may stop or detain an individual if they have a reasonable suspicion based on specific and articulable facts from the totality of the circumstances that the person is or was involved in criminal activity." *State v. Pfleiderer*, 8 S.W.3d 249, 254 (Mo. App. W.D. 1999). "[A]ny traffic violation, even a minor one, gives an officer probable cause to stop the violator." *Smith*, 595 S.W.3d at 145 (internal quotation marks omitted). Furthermore, in the context of Fourth Amendment reasonable suspicion analyses, "'so long as an officer is doing no more than he or she is legally permitted and objectively authorized to do' the officer's motives 'do not matter.'" *Pfleiderer*, 8 S.W.3d at 255 (quoting *State v. Meza*, 941 S.W.2d 779, 780-81 (Mo. App. W.D. 1997)).

Here, however, the trial court concluded that there was no credible evidence presented that Alford's vehicle was parked in such a way as to be "blocking" or was otherwise "in front of a public or private driveway" in violation of section 300.440.1(2). The trial court expressly concluded that it found it no coincidence that Sergeant Berry's probable cause statement— prepared immediately after the arrest on the date of the incident in question—did *not* mention that Alford's vehicle was "blocking" or "in front of" a public or private driveway; the probable cause statement did *not* mention a traffic violation, minor or otherwise; and Sergeant Berry did *not* issue a traffic ticket to Alford for being unlawfully parked. Hence, when Sergeant Berry "remembered" new and additional facts at the hearing on the motion to suppress, the trial court expressly found such new memory to be "not credible"—a finding that we must defer to.

5

Because there is substantial evidence in the record to support the trial court's credibility finding and corresponding conclusion that the State did not meet its burden to demonstrate a traffic violation had occurred and, hence, there was no "reasonable suspicion" in support of Sergeant Berry's investigative detention, we affirm the trial court's determination that Sergeant Berry's *Terry* stop was not constitutionally proper.[5]

Point I is denied.

## II.

In its second point on appeal, the State argues that the trial court erred in granting Alford's motion to suppress on the basis that "Sgt. Berry did not have reason to initiate the contact with Defendant in his role as a community caretaker because there were no facts from which one could reasonably infer that Defendant was in need of assistance."

A law enforcement officer may approach a vehicle as a community caretaker for safety reasons or motorist assistance without violating the Fourth Amendment if the officer "can point to reasonable, articulable facts upon which to base his actions." *State v. Schroeder*, 330 S.W.3d 468, 473 (Mo. banc 2011). In other words, it is not enough for the officer to speculate about unknown possibilities of mechanical or safety assistance; instead, there must be articulable facts from which a reasonable officer or "community caretaker" would believe the driver was in need of assistance.

Here, Sergeant Berry confirmed that he did not observe any mechanical difficulty with the Alford vehicle; he did not observe any malfunctioning equipment; he did not observe any flat tires; he did not observe any engine trouble and, in fact, confirmed that the engine was running at all

---

[5] The trial court provided alternative grounds supporting the basis of its suppression ruling, but since we have concluded that the initial basis for the trial court's suppression ruling as to its *Terry* stop analysis is affirmed, we need not and do not address the trial court's alternatively provided grounds, for "[t]his Court is primarily concerned with the correctness of the trial court's result, not the route the trial court took to reach that result, and the trial court's judgment must be affirmed if cognizable under any theory." *State v. Douglass*, 544 S.W.3d 182, 189 (Mo. banc 2018) (internal quotation marks omitted).

relevant times; and, he did not observe any other evidence that the motorist in the Alford vehicle was in any distress. Under these circumstances, the trial court concluded there were no "reasonable, articulable facts upon which" to base Sergeant Berry's actions in approaching the Alford vehicle and conducting his subsequent investigative detention.

The State, citing *Schroeder* and ignoring our required lens of factual review, recites *other* facts Sergeant Berry testified to at the suppression hearing that would *support* the *opposite* ruling from that which the trial court made. And, although *Schroeder* involved an officer stopping to assist a driver in his community caretaker role at approximately 2:00 a.m., 330 S.W.3d at 473, that is where any "similarities" with the *Schroeder* case end; for, in *Schroeder*, the officer was also concerned with the "dangerous situation" of a vehicle parked on the shoulder of a busy roadway with its bright headlights activated and staying activated unlawfully when vehicles approaching in the opposite direction passed by. *Id.* Further, by Mr. Schroeder's own admission, he had stopped to check on low tire pressure with one of his tires and otherwise because "the car did not feel right." *Id.* at 471. Simply put, the factual and procedural scenario in *Schroeder* is inapposite to the present case.

Further, even were we to conclude that evidence the trial court found to lack credibility created a permissible and reasonable alternative view of the evidence, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *State v. Williams*, 334 S.W.3d 177, 181 (Mo. App. W.D. 2011) (internal quotation marks omitted).

Deferring to the trial court's factual findings and credibility determinations, the entirety of the record in this case does not support a conclusion that the trial court clearly erred in finding that Sergeant Berry did not possess reasonable, articulable facts that justified his approaching Alford's

vehicle for "community caretaker" safety reasons or for motorist assistance. *Schroeder*, 330 S.W.3d at 473.

Point II is denied.

## Conclusion

Because Sergeant Berry had no constitutionally proper basis for approaching Alford's vehicle and conducting an investigative detention of Alford, the trial court's suppression ruling is not clearly erroneous. Accordingly, we affirm the trial court's suppression ruling.

/s/ *Mark D. Pfeiffer*

Mark D. Pfeiffer, Presiding Judge

Alok Ahuja and Gary D. Witt, Judges, concur.